# EASTERN TRUST AND BANKING COMPANY

*v.*

# AMERICAN ICE COMPANY.

---

# AMERICAN ICE COMPANY

*v.*

# EASTERN TRUST AND BANKING COMPANY.

---

RECEIVERS; MORTGAGES AND DEEDS OF TRUST, FORECLOSURE OF; ASSIGNOR AND ASSIGNEE; COVENANTS; INSURANCE OF MORTGAGED PROPERTY; ACCOUNTING.

1. A receiver of mortgaged real estate will not be appointed pending a suit to foreclose the mortgage, where it appears that all the improvements on the realty have been destroyed by fire and there is no rent or income receivable from the property.
2. Where a mortgage reserves to the trustee named in it the right to enter and take possession of the mortgaged property after default in payment of the debt secured, a receiver will not be appointed pending a suit to foreclose, as the trustee and mortgagee have an adequate remedy at law in respect of the possession.
3. A receiver will not be appointed pending a suit to foreclose a mortgage where in another suit the title of the mortgaged property has been determined to be in the United States and an appeal from the decree in such other suit remains undecided.
4. Until the mortgagee takes actual possession of the mortgaged property, the mortgagor, or his assignee, is not liable, without an express covenant to that effect, to pay rent, and is entitled to take the rents and profits to his own use.
5. The relation of an assignee to his assignor is of a representative nature, and he can occupy no better position than the assignor, with respect of the property assigned.
6. While as a general rule a covenant to insure and keep insured improvements on real estate, is a mere personal covenant and does not run with the land, where a mortgage provides that the mortgagor will keep the property at all times insured, in such amounts as will reasonably protect all the insurable prop-

erty, payable, in case of loss, to the trustee, as his interest shall appear, and that in case of loss the insurance money may be applied by the trustee to the renewal of or addition to the property destroyed or injured, or, at the option of the trustee, placed in a sinking fund for the redemption of the mortgage debt, such covenant will run with the land, at least in an equitable sense ; and where an assignee of the mortgagor insures the property and a loss occurs, a court of equity will apply the insurance money received for the benefit of the mortgage creditors, although the assignee took out the insurance for the benefit of all of the creditors and paid the premiums with the assets of his assignor.

7. In the absence of affirmative proof to the contrary, it will be presumed that a sale by the trustees in a deed of trust or mortgage executed in Maine and covering real estate in that State and also in this District, of the property located there, was fairly and legally made.

8. But as preliminary to a decree of foreclosure of such a deed of trust here and the sale of the property in this District, the mortgagor and its general creditors will be entitled to an accounting by the trustee of the proceeds of the sale of the Maine property, in order that it may be determined with certainty for what amount a decree should be passed.

9. No sale of the mortgaged property here should be allowed under such circumstances, however, pending an appeal from a decree in another suit adjudging the title of such property to be in the United States.

Nos. 800 and 801.  Submitted January 19, 1899.  Decided February 28, 1899.

HEARING on an appeal and a cross-appeal from a decree of the Supreme Court District of Columbia in a suit to foreclose a mortgage of certain real estate, for the appointment of a receiver, and for an accounting. *Reversed.*

The COURT in its opinion stated the case as follows:

These are cross-appeals; the first by the Eastern Trust and Banking Company, and the second by the American Ice Company, and William G. Johnson, assignee of the latter company, from a decree passed on the bill filed by the first named appellant, for the purpose of foreclosure by sale of certain mortgaged premises, situate in the city of Washington, and for the appointment of a receiver, and also for an account of rents and profits, and for certain insurance

14 Ct. App.—21

money received by the defendant William G. Johnson, as the assignee of the defendant Ice Company.

Both of the corporations concerned are corporations of the State of Maine, and the mortgage was made in that State, and was made to embrace and operate upon certain real estate situated in the County of Penobscot, State of Maine, and also certain real estate situate in the city of Washington, District of Columbia. The mortgage or deed of trust was made by the American Ice Company to the Eastern Trust and Banking Company, to secure the payment of certain bonds, amounting in the aggregate to $40,000, payable in several instalments of $5,000 each, in from three to ten years from the 1st of December, 1889. The bonds were all made payable to the complainant, the Trust Company, or bearer, and were by it, in accordance with the authority given, sold and delivered to various persons, for full value before maturity.

The property embraced in this mortgage or deed of trust, made on the 2d of December, 1889, to secure the bonds so issued, consisted of certain real estate in the county of Penobscot, Maine, improved by ice houses, and the engines, machinery and appliances usually employed in harvesting ice in that State; and also of certain real estate, that it claimed to own in the city of Washington, District of Columbia, located opposite Square No. 270 of said city, and being entirely within the limits of the bed of the Potomac river. This latter mentioned property was improved by wharf and ice houses used for storing and distributing the ice gathered in the State of Maine, and shipped to this District for sale. The mortgage or deed of trust contained the provision usually found in deeds of the kind, that the grantor therein should retain possession of the premises conveyed until default in the payment of the principal or interest of said indebtedness, or in the maintenance of insurance, or the payment of taxes upon said real estate. It was further provided, that if default should be made by the American Ice

Company in the payment of the said bonds or any of them, as they became due and payable, and such default should continue for ninety days, then the whole amount of principal and interest thereon remaining unpaid, should be deemed immediately due and payable, and it should be lawful for the trustee, the complainant, to enter and take possession of said property for the purpose of sale.

The sale of the property as directed by the mortgage or deed of trust was required to be made at public auction in the city of Bangor, upon such terms as to credit, partial credit, and security for payment, as the grantee in the deed might think proper or expedient, having first given public notice of the time and place of the sale or sales, by advertisement printed not less than once a week for four successive weeks in one or more newspapers printed and published in the city of Bangor and also in the city of Washington. It also provided that the trustee should have the right to adjourn the sale or sales from time to time, in its discretion, giving reasonable notice of such adjournments, etc., and after such adjournment to make the sale at the time and place designated by the notice of adjournment, and that no other notice should be required. The trustee was authorized to convey to the purchaser the premises sold, and to apply the proceeds of sale, first, to defray the expenses of sale, together with its just and lawful charges for services and expenses, including reasonable allowance for attorney and counsel fees, and also all advances and expenses reasonably incurred by the trustee in operating, maintaining, or managing the property or business of the Ice Company while in possession thereof, and all payments made by the trustee for taxes, assessments, insurance, and other proper charges upon said property; and the balance of such proceeds to be paid over ratably to and amongst the parties holding the bonds and coupons, etc. And, further, that the bondholders, or any number of them, or any person in their behalf, should have the right to purchase at any such sale made as aforesaid.

.The mortgage or deed of trust contains a specific covenant, that the American Ice Company, the mortgagor, would and should pay all taxes and assessments, etc., and would and should keep said mortgaged property *at all times insured* in such insurance companies as might be approved by the trustee, in such amounts as *should reasonably protect all the insurable property*, payable, in case of loss, to the trustee as its interest might appear. "In case of loss the insurance money may *be applied by the trustee toward the renewal of, or addition to, the property destroyed or injured*, or, at the option of the trustee, the money may either be retained and invested in such securities as it approves, as a sinking fund for the redemption of the bonds when due, or be applied to the payment of the principal of such of the bonds as may be at the time due and unpaid," etc.

The first instalment of the bonds secured by the mortgage fell due in December, 1892, and was paid, together with the interest then accrued and due upon all of the bonds. The next instalment became due in December, 1893, but was not paid at maturity, nor was the interest paid. Before this default, but after the American Ice Company had become insolvent, that is to say, on the 13th of October, 1893, the Ice Company made a general assignment of all its property and effects to the defendant, William G. Johnson, for the benefit of *all its creditors*. This assignment was accepted by Johnson, and by virtue thereof he leased the property of the Ice Company, located in the city of Washington, being the property embraced in the mortgage or deed of trust, to Edward M. Willis, on the 29th of January, 1894, for one year, for a rental of $130 per month. The rent accruing until the property was burnt down was received by the assignee Johnson, who still holds the same subject to the final decree in this case. All the improvements upon the property were destroyed by fire on the 11th of February, 1896.

After the default in payment in principal and interest, and upon request of the requisite number of the bond-

holders, the mortgaged property, as well that located in the city of Washington as that located in Penobscot County, in the State of Maine, was advertised to be sold at public auction in the city of Bangor, on the 9th of May, 1894, and in the advertisement it was stated that the terms and conditions of sale would be announced by said trustee at the time and place of sale. The terms were announced, but no sufficient bid being received at that offer, the sale was postponed to the 8th of June, of the same year, to take place at the place where the first offer was made. Notice of this postponement appears to have been duly given. In accordance with the notice of postponement, the property was offered a second time, but no adequate bid was received, and the sale was again postponed to the 8th of September, 1894, upon due notice thereof given. At this last postponed offer of the property, it appears, bids were received for both parcels of property, that located in Maine, and that located in the city of Washington, and that both properties were bid in by a committee representing the bondholders. The property in Maine was struck off to such committee, as the highest and best bidders, at and for the sum of $14,500; and that the Washington property was struck off to the same bidders at and for the sum of $14,000; but that the sale of the latter property has never been perfected, and has been abandoned by the committee, and consequently it still remains in the trustee under the deed of trust, undisposed of, and liable to sale for the benefit of the bondholders. There was no conveyance made by the trustee company to the committee of bondholders as purchasers of the Maine property, and the same was held by the trustee, and was rented out, and the rents received by it, until March, 1897, when the property was sold to the Consolidated Companies of New York, for the sum of $16,500; and the committee of bondholders and the Trust Company joined in the conveyance to make title. The rents and profits of the property, in the meantime received by the Trust Company, have been

accounted for.   And the proceeds of the sale made to the Consolidated Companies, together with the rent received, after deducting what are claimed as proper expenses, disbursements, and commissions for administration, have been distributed to the bonds *pro rata*, paying 39 per cent. of the face of the bonds, leaving 61 per cent. still due and owing, besides interest.   This is according to the statement of the complainant, the Trust Company, the correctness of which, however, is in several respects controverted by the defendants.

Some time after the general assignment of the Ice Company to the defendant Johnson, the latter as assignee took out several policies of insurance on what he claims as his own interest, as such assignee, in the property located in Washington, to the amount of $3,000.   The improvements on the property, as we have already stated, were totally destroyed by fire, in February, 1896.   The insurance money has been paid over to Johnson as assignee, who was at the time of the insurance, and for some time thereafter had been, in the possession of the property.   The premiums on the policies of insurance were paid out of the assets of the American Ice Company.   The money received on the policies is held by the assignee Johnson, to abide the final determination of this case.

The bill of complaint, after setting out at length and in great detail the alleged facts of the case, prayed: (1) For the appointment of a receiver to take charge of the property in this District; (2) That the defendant Johnson, as assignee of the Ice Company, be required to account to the complainant, the Trust Company, for the rents, income and profits derived from the property in this District from the time of notice served and demand made for the possession of the property, and his refusal of such demand, to the time of accounting; (3) That said Johnson as assignee be required to pay into the registry of the court, to abide the final decree in the case, the money received from the insurance companies on

the policies of insurance obtained by him on the property in this District, which was destroyed by fire, and that the complainant be decreed to be entitled to a lien or equitable right to such insurance money for the better security of the said bonded indebtedness; (4) That a decree of foreclosure by sale be passed, and that the property be sold for the payment of the balance of the mortgage debt; and for general relief.

The defendants, the American Ice Company, and Johnson, the assignee, by their answers, whilst admitting most of the facts alleged by the complainants, strongly controvert the right of the complainant to the relief sought by it. They deny the right to have a receiver appointed, and to any account for rents received, or for the insurance money received by Johnson, the assignee; and they deny the right to a decree for sale or foreclosure of the premises situate in the city of Washington until an account be regularly taken of the money received for sale and rent of the property situate in the State of Maine. They also question the validity of the sale of the property situated in Maine.

The court below, by its decree, denied all the relief prayed for by the complainant, except the right of foreclosure and sale of the mortgaged premises, for the payment of a balance due of the bonded indebtedness of $21,350, with interest thereon from the 2d day of December, 1892, as ascertained and declared by the decree, without the statement of any preliminary account; and a decree of sale was passed, and trustees to make the sale were appointed. From this decree both parties have appealed.

*Mr. B. F. Leighton* and *Mr. Geo. Francis Williams* for the appellant, the Eastern Trust and Banking Co.:

1. Where a mortgage does not cover the rents and income of property, the mortgagee is not, as a general proposition, entitled to them even after default made in the payment of the mortgage debt, but where it appears that the mortgagor

or party primarily holden for the payment of the debt is insolvent, and the mortgaged property is an inadequate security, the court will appoint a receiver for the purpose of securing the rents and income of the property for the protection of the mortgagee. High on Receivers, Sec. 666. This proposition is abundantly supported by the authorities. *Quincey* v. *Cheeseman*, 4 Sandf. Ch. 405; *Brown* v. *Chase*, Walk. (Mich.), 43; *Hyman* v. *Kelly*, 1 New. 179; *Ruggles* v. *Railroad Co.*, 5 Chicago Legal News, 110; *Keep* v. *Railroad Co.*, 6 Chicago Legal News, 101; *Hitt* v. *Robertson*, 24 Miss. 368; *Insurance Co.* v. *Stebbins*, 8 Paige, 565; *Herbert* v. *Greene*, 3 Ir. Ch. (N. S.) 274; *Warner* v. *Gouverneur's Exrs.*, 1 Barb. 36; *Astor* v. *Turner*, 2 Barb. 444.

The contrary doctrine seems to obtain in New Jersey, but even in this State, if in addition to the insolvency of the mortgagor or party personally responsible for the debt and the inadequacy of security, it appears that the property mortgaged has deteriorated in value after the encumbrance was put upon it, either by commission of waste, or a destruction of all or part of the improvements by fire, such additional circumstance will warrant the court in appointing a receiver. *Corteleyne* v. *Hathaway*, 3 Stockton, 39. If the debt secured by the mortgage is actually due, and the proceeds of the mortgaged premises not likely to prove sufficient for the payment of the debt and costs, and the mortgagor, or person who is personally liable for the deficiency, is insolvent, a receiver may be appointed to secure the rents and profits which have not been collected, for the benefit of the mortgagee. *Astor* v. *Turner*, 11 Paige, 436; *Post* v. *Darr*, 4 Edw. Ch. 412; *Lofsky* v. *Maujer*, 3 Sandf. Ch. 69. It seems hardly necessary to quote an authority in support of the principle that a deed of trust and mortgage stand on the same footing in respect to the power and duty of the court to appoint a receiver. *Insurance Co.* v. *Stebbins*, 8 Paige, 565.

The Ice Company is confessedly insolvent. There is no probability that the property embraced in the mortgage,

situated here, will sell for enough to approximately pay the balance of the indebtedness due.   Since the mortgage was given the ice warehouse which was upon the wharf property at the time of the mortgage has been consumed by fire, and the wharf itself injured to a considerable extent.   The property covered by the mortgage lies within the limits of the bed of the Potomac River, and the title has been adjudged to be in the United States.

This judgment awaits review in the Supreme Court of the United States, and should the lower court be sustained, the security afforded by the mortgage upon said property would become worthless.   It is difficult to perceive or state a case more strongly appealing for the intervention of a court of equity by the appointment of a receiver.

2. Except for the provision in the trust deed permitting the grantor therein to retain possession until default was made in the payment of the said bonded indebtedness, as provided by the terms of said trust, the trustee thereunder would have been entitled to take immediate possession of the mortgaged property, and to have received the rents and profits thereof, and if kept out of possession by the grantor, could have maintained an action of ejectment to recover such possession. *Loring* v. *Bartlett,* 4 App. D. C. 1; *Moss* v. *Gallimore,* 2 Sm. Lead. Cases, with authorities there cited.

The Eastern Trust and Banking Company after default and notice was entitled to receive the rents and profits thereafter accruing from the mortgaged property.   Taylor's Landlord and Tenant, Sec. 121.   Where the lease is subsequent to the mortgage made by the mortgagor while remaining in possession of the mortgaged premises, the mortgagee may treat the tenant as a disseizor or trespasser, and may maintain ejectment or writ of entry against him. *Pittsburg* v. *Melvin,* 15 Mass. 268; *Insurance Co.* v. *Wilson,* 10 Metc. 126.   And no notice to quit is necessary. *Doe* v. *Mace,* 7 Blackf. 2; *Rockwell* v. *Bradley,* 2 Conn. 1; *Steadman*

v. *Gassett*, 18 Vt. 346; *Bartlett* v. *Hitchcock*, 10 Brodw. (Ill.), 871; *Carver* v. *Sheehan*, 74 Ala. 452.

- If the mortgagor or his tenant become a trespasser after default, can there be any right in the mortgagor or in his tenant to possession of the property after default, when the mortgagee has the right to recover such possession by action of ejectment? The two rights are hostile to each other, and can not coexist. If there is an actual entry by the mortgagee, or some act equivalent thereto, the mortgagee may maintain an action against the tenant for the recovery of the rent. *Russell* v. *Allen*, 2 Allen, 421; *Long* v. *Wade*, 70 Maine, 358; *Kimball* v. *Lockwood*, 6 R. I. 138. Although the entry of the mortgagee be ineffectual for the purpose of foreclosure, yet if notice be given to the tenant he is entitled to subsequently accruing rent. *Cook* v. *Johnson*, 121 Mass. 326; *Gartside* v. *Arthely*, 58 Ill. 210.

In *Clark* v. *Abbott*, 1 Md. Ch. 474, it was held that notice to the tenant was sufficient without more; that thereupon rent was payable to the mortgagee, and he could maintain suit therefor. In *Pope* v. *Biggs* the mortgagee was held entitled to the rent of the mortgaged premises accruing after default in the payment of the mortgage debt, and notice to the tenant. In this case the lease was subsequent to the date of the mortgage. The effect of notice was to put an end to the right of the mortgagor to receive the rent. The effect of the Statute of 4th Anne, Chap. 16, Secs. 9 and 10, was to put the tenant, after notice, in the same situation as he would have been had he attorned to the mortgagee.

In July, 1894, the Ice Company was in default in payment of said bonds, and plaintiff was, by the terms of the trust securing said bonds, entitled to the immediate possession of the mortgaged premises. It attempted to exercise this right, but was prevented by the defendants, Johnson and Willis, from so doing; notice to quit became necessary and was duly served on each of them. Said notice accu-

rately described said property, and contained a peremptory notice to said defendants to remove from and quit said land and premises. The notice to quit was without qualification. The defendants retained possession of the premises after the expiration of said notice and declined to yield peaceable possession thereof to the plaintiff, in express violation of the terms of said deed of trust, and in hostility to its legal meaning and effect. The attempt to take possession of the property was *bona fide.* To permit said defendants to retain possession of said property after said demand and notice, is to permit them to take advantage of their own wrong. "What ought to be done shall be regarded as done," is one of the maxims of the court of chancery. If it was the legal duty of the defendants, Johnson and Willis, to remove from said property upon demand, under the circumstances above set out, and they failed so to do, it is equally the obligation of a court of chancery to treat them as though they had performed what the law required of them, and to treat the rent collected by the said Johnson, or which reasonably might have been collected by him, as having been collected for the benefit of the trust imposed upon the property, and he should be compelled to account for the same to said trustee for the purpose of paying any deficiency that may arise from the sale of the property securing the indebtedness.

3. That the covenant to insure contained in the deed of trust runs with the land, and is not a mere personal obligation of the covenantor, is a proposition abundantly supported by authority. *Thomas* v. *Vonkapff*, 6 G. & J. 372; *Vernon* v. *Smith*, 5 B. & A. 10; *In re Brewing Co.*, 3 Biss. 175.

That a covenant to rebuild buildings destroyed or injured by fire, which were upon the property at the time of the covenant, is a covenant running with the land, was settled in *Spencer's Case*, 1 Smith's Ld. Cas. 116. A covenant to rebuild or repair at the election of the covenantee is as much within the principle established in this case, as though the

obligation were absolute instead of elective. If the covenant in controversy was merely a covenant to insure without more, it might be questionable whether it run with the land or was a mere personal obligation binding the covenantor alone. *Dunlop* v. *Avery*, 59 N. Y. 596; *Reid* v. *McCrum*, 91 N. Y. 412. In neither of these New York cases was the question here presented before the court. In neither of them was there any provision permitting or requiring the insurance money to be applied to the restoration of the buildings insured in the event of their destruction or injury, and in the latter case the court expressly declared that it had no purpose of deciding what would be the effect of such a covenant.

The assignee under an assignment for the benefit of creditors is the representative of the assignor and not the representative of the creditors, and can not, therefore, take to himself any of their rights. He is not a purchaser for value. The property covered by the assignment is subject to all the equities and liens which exist against it in the hands of the assignor. He succeeds to and enjoys the rights of the assignor, and none other, except that the property in his hands is not liable to execution. He is but the assignor himself so far as the rights of the creditors are concerned. Burrell on Assignments, 391, and cases cited.

In *Chipman* v. *Carroll*, 25 L. R. A. 305, the court held that where there is an agreement between the mortgagor and the mortgagee that the mortgagor shall keep the premises insured for the benefit of the mortgagee, and the mortgagor takes out a policy of insurance in his own name which is not assigned to the mortgagee or made payable to him in any way, the mortgagee has an equitable lien upon the proceeds of the policy, and that this agreement might be shown by parol evidence.

The covenant on the part of the Ice Company to keep the premises insured for the benefit of the bondholders gave to the trustee under the deed of trust an equitable right to a

lien upon the policy when taken out and upon the insurance money in case of the loss or destruction of the property insured. This right is not affected by the failure of the covenantor to have the policy made payable to the trustee, as was required by its terms, nor could it have been defeated even by an assignment of the policy for the benefit of other creditors. It is a right binding not only the grantor in the trust, but its assignee in bankruptcy, and even a purchaser for value with notice. *Thomas* v. *Vankapff, supra*; *Geddings* v. *Seevus*, 24 Md. 372; *Miller* v. *Aldrich*, 31 Md. 411; *Cromwell* v. *Insurance Co.*, 44 N. Y. 46.

The doctrine announced in these cases is sustained by numerous authorities, a few of which only are cited. *Nichols* v. *Baxter*, 5 R. I. 491; *Ellis* v. *Crutzinger*, 27 Mo. 311; *Lazarus* v. *Insurance Co.*, 2 Amer. Ld. Cas. 834; *Grange Mill Co.* v. *Assurance Co.*, 118 Ill. 396; *Chipman* v. *Carroll*, 25 L. R. A. 305

The Ice Company had no insurable interest in the mortgaged property after the assignment. It was thereafter in no position to fulfill its covenant to keep the mortgaged premises insured for the benefit of the trust. After the assignment, this obligation devolved upon the assignee. He was in possession, in pernancy of the rents and profits at the time of the fire, which occurred long after default in the mortgage, and after due demand had been made upon him for possession of the property by the trustees, as provided by the deed of trust, in subordination to which he took title. The litigation which followed demand for possession was rendered necessary by the failure of the assignee to yield possession to the trustee under said trust. Retention of possession by the assignee, and the resulting litigation, rendered it difficult, if not impossible, for the trustee under the deed of trust to obtain any insurance upon the property. The assignee collected the rents accruing from the property for more than two years after the American Ice Company made default in the payment of its bonds, and after demand was made upon him for possession. Out of these rents he kept

the property insured, and when it was destroyed by fire proposes to keep the balance of the rents, and the money derived from the insurance. We submit that it is inequitable for him to do so. .

*Mr. Calderon Carlisle* and *Mr. William G. Johnson* for the appellants, the American Ice Co. et al.:

1. An accounting of receipts and disbursements was necessary, and the court erred in fixing the balance due at $21,350. The bill alleges that the property in Maine was sold on September 8, 1894, to a committee acting for the bondholders, for the sum of $14,000; that the committee have never perfected their purchase of the Maine property and no deed has passed to them thereunder, but they tender themselves ready and the plaintiff is ready on its part to comply with the terms of said sale. It is further alleged that there will be realized from said sale, after deducting the trustee's commissions and certain necessary disbursements and expenses and the reasonable costs and expenses of the said sale in conformity with the provisions of the said trust, the sum of $9,173.68 to be credited upon the residue unpaid of said bonded indebtedness and interest. It is nowhere stated in the bill nor is there any evidence in the record to show what were the trustee's commissions or what was comprehended in the vague and indefinite phrase of certain necessary disbursements and expenses or the reasonable costs and expenses of the sale.

It is not pretended that the court was under any obligation to refer the cause to the auditor to state the account of the trustee and ascertain the rightful balance, but under the circumstances disclosed by this record that would have been an eminently proper course, and undoubtedly would have been pursued had it not been for some inexplicable misapprehension on the part of the court below as to the facts. But while the right of the court itself to state the balance without a reference to the auditor is freely admitted, it was

not within the power of the court to state such balance without competent evidence. This does not exist in this record, and it will be impossible for this court, sitting as a court of chancery, to take the testimony in this record and state any account whatsoever of the receipts and disbursements, by which the proper credits can be shown and the proper balance, if, indeed, any at all, can be established.

2. The complainant and the bondholders should be required to bring in the Maine property for a resale before being allowed recourse to the Washington property. By the evidence in this cause, furnished by the complainant, it is established that the complainant and bondholders, acting in concert, advertised the Maine property for sale and offered it at public auction on the 8th of September, 1894. By the published advertisements it was announced that the terms of sale would be proclaimed at the sale, and by the testimony of the complainant's witnesses it is shown that these terms of sale were prescribed in writing by the bondholders as set out in the record. At this so-called sale the property is alleged to have been struck off to a committee representing the bondholders; and by the testimony of one of that committee, the only one who testifies in the cause, it appears that the terms of sale were never complied with. No money or notes were given. No deed was ever received. The property was continued in the possession of the trustee and rented by it and the rent received by it; and no credit of either principal or interest was made upon any of the bonds; but the whole matter stayed in the control of the trustee as though nothing had ever been done. It is thus apparent that the auction sale was a mere ruse and that by means of that the trustee and the bondholders acting together effected a sale of the Maine property at private sale upon their own terms and without any opportunity for competition. The trustee representing the bondholders, and the bondholders through their committee operating together in this irregular way, secured control of the Maine property and disposed of

it at private sale on their own terms. Having seen fit to dispose of the Maine property at private sale on their own terms through the medium of a pretended execution of the trust, they are debarred from any recourse against the other property, to which alone the general creditors can look for payment of their debts, unless they first bring in the Maine property for a free and fair sale under the terms of the trust deed.

3. The complainant mortgagee is not entitled to the rents accruing before the filing of this bill. Upon default in the payment of the debt it is obvious that any one of several proceedings might have been taken by the trustee :

First, it could have taken actual possession for the purposes of sale, as provided in the deed of trust, and executed the trust in accordance with the terms, by a public sale of the property, followed by a conveyance to the purchaser and the actual delivery of the possession thus previously acquired by it for that purpose. Second, it could have advertised and sold the property to the purchaser without first taking possession, as it claims and pretends to have done, in which event, upon compliance with the terms of sale, the purchaser would have been entitled to a deed of conveyance, upon which such purchaser could have maintained proper proceedings for possession had possession been refused ; or, thirdly, it could have filed a bill for the foreclosure of the mortgage and sold the premises through the medium of a court of equity as it has ultimately attempted, in which proceeding, upon a proper showing, a receiver might undoubtedly have been appointed, which receiver would have been entitled to the rents and profits accruing after his appointment. No one of these several proceedings was attempted. But, on the contrary, as shown by its own evidence, the trustee has proceeded in an anomalous and altogether inadmissible manner not authorized by anything in the terms of the deed of trust, or in the law applicable to

the enforcement of mortgages, resulting only in the unauthorized private sale and conveyance of the property in Maine.

But apart from these considerations, the irregular attempts to get possession for the alleged purchaser, upon the pretense, now exposed, that it was a condition of the sale, can avail nothing, and the mortgagee could not become entitled to the rents and profits until possession was actually taken by the mortgagee or by the court for it. *Long* v. *Wade*, 70 Me. 359; *Noyes* v. *Rich*, 52 Me. 117; *Argall* v. *Pitts*, 78 N. Y. 243.

In *Bridge Co.* v. *Heidelbach*, 94 U. S. 798, the mortgage covered income specifically, as well as real estate, and a bill was filed by the mortgagee to have the accumulated income applied to the satisfaction of the mortgage debt. The court said (p. 800): "In this case, upon the default which occurred, the mortgagees had the option to take personal possession of the mortgaged premises, or to file a bill, have a receiver appointed and possession delivered to him. In either case the income would thereafter have been theirs. Until one or the other was done, the mortgagor, as Lord Mansfield said in *Chinnery* v. *Black*, 3 Doug. 391, was 'owner to all the world and entitled to all the profit made.'" See, also, *Russell* v. *Allen*, 2 Allen, 42; *Wilder* v. *Houghton*, 1 Pick. 87.

The same doctrine was affirmed in *Mayo* v. *Fletcher*, 14 Pick. 525, cited and approved in *Teal* v. *Walker*, 111 U. S., where the court says (p. 531): "The assignee of the mortgagor is not liable in trespass for the rents and profits accruing between the commencement of the action to foreclose and the time of taking possession upon execution." See, also, *Trust Co.* v. *Willis*, 169 U. S. 295.

4. The mortgagee was not entitled to the insurance money resulting from insurance effected by the assignee upon his own interest. In November, 1895, when this insurance was taken out by the assignee, the mortgagor was and for two years had been insolvent. At the time of the insurance and of the fire the assignee was in possession—preserved in

14 Ct. App.—22

that possession by a supersedeas bond, under which he was liable, in the event that the judgment against him for possession should be affirmed.    In addition to that, as the representative of the unsecured creditors, he had and has the right to redeem the property by paying the mortgage debt.    Under these circumstances he had distinctly an insurable interest in the property, as did also the complainant, the mortgagee. The assignee never agreed to take out insurance for the benefit of the mortgagee, and under the deed of assignment he had no more right to divert the funds coming into his hands as assignee to the payment of insurance premiums for the exclusive benefit of the mortgagee than he had to pay the mortgagee's interest or debt in full.    In applying the funds coming into his hands as assignee to creditors, whether secured or unsecured, he had only the right to apply them *pro rata;* and this very insurance money received by him will be distributed *pro rata* among the unsecured creditors and the mortgagee according to the respective amounts of their claims.    As appears by the answer of all the defendants the insurance was taken out, not in fulfillment of the covenants in the deed of trust, but for the exclusive benefit of the assignee, insuring his interest alone in the premises.    It is conceded that where a mortgagor agrees to insure for the benefit of the mortgagee and takes out such insurance, whether in the name of the mortgagee or in his own name, it will in equity be considered in fulfillment of his covenant, and will enure to the benefit of the mortgagee. This is all which the many decisions cited in the complainant's brief hold, as will be demonstrable upon examination. In every case cited in the complainant's brief on this subject, except the case of *Miller* v. *Aldrich,* 31 Mich. 411, and the case of *Ellis* v. *Kreutsinger,* 27 Mo. 311, the insurance was taken out by the mortgagor, or vendee, under an express agreement to insure for the benefit of the mortgagee, or vendor.    In the former case the mortgagor had agreed to insure for the benefit of the mortgagee, and actually took

out insurance for the full value of the property for the benefit of the mortgagee. He subsequently aliened the property subject to the mortgage, and upon a distinct agreement with the alienee, as part of the contract of sale, that the alienee would continue the insurance for the benefit of the mortgagee, and turned over to his alienee the existing insurance policy, which was made payable to the mortgagee, and which had six years of the seven years of the mortgage yet to run. The alienee delivered up the policy to be canceled and took a new policy in his own name; and subsequently, when the mortgagee expressed apprehension about his security, assured the mortgagee that the property was insured for his benefit.

In *Ellis* v. *Kreutsinger*, 27 Mo. 311, the parties had given a chattel mortgage on a stock of merchandise, and the mortgagor had taken out a policy of insurance and actually delivered the same to the mortgagees as additional collateral security, thereby giving them an equitable mortgage upon the insurance policy itself.

Much importance is given in the brief for the complainant to the decision of the Court of Appeals of Maryland in the case of *Thomas' Admrs.* v. *Vonkapff's Exr.*, 6 G & J. 372, but examination of the facts of that case will show it to be wholly without application. Thomas, the mortgagor, took out the insurance himself, recovered the money and deposited the very check for the insurance money, impressed with an express trust in writing that it be applied for the use of the mortgagee, either in rebuilding under the covenant or as a payment on account of the mortgage debt. Having covenanted to insure for the benefit of the mortgagee and having actually done so and received the insurance money, the money was in equity fettered with the trust for the mortgagee, and his memorandum with the deposit but expressed what the law imposed. There is no room for doubt that when the mortgagor covenants to insure for the benefit of the mortgagee and does so, the insurance is additional security for the debt and belongs to the mortgagee. It is true

that the court speaks of the covenant to insure in that case as one running with the land because there was the absolute obligation to repair and rebuild, but this was mere *obiter.* There were no facts in the case calling for the announcement or application of that principle.

In the present case the insurance was not taken out by the mortgagor, but by the one claiming to be the owner of the equity of redemption. To hold the mortgagor's covenant to insure in this case to be a covenant running with the land would be to hold the assignee personally bound to insure, whether he had assets or not, and make him personally liable in an action of covenant for the value of the improvements; in other words, the assignee would personally become the insurer, a proposition too absurd to be considered.

As already shown, none of the cases cited in the brief for complainant are cases in which one owning or rightfully interested in the equity of redemption insured his own interest. Cases have been decided, however, in which it has been sought to make such insurance liable for the mortgage debt, and the decisions have uniformly been against the contention. *Wheeler* v. *Insurance Co.*, 101 U. S. 439; *Insurance Co.* v. *Stinson*, 103 U. S. 25; *Dunlop* v. *Avery*, 89 N. Y. 592; *Reid* v. *McCrum*, 91 N. Y. 412.

5. There was no error in refusing the appointment of a receiver. It is unnecessary to consider in this case the grounds justifying the appointment of a receiver, or the nature of the court's discretion in the matter. For the purposes of this case the position of counsel for complainant may be conceded, because the action of the court in refusing to appoint a receiver is so obviously justified by the facts. The court had rightly adjudged that complainant was not entitled to the insurance money nor to the rents accruing prior to the filing of the bill; but even if that were error, the converse would be no just ground for the appointment of a receiver, as the insurance money and rents, upon com-

plainant's theory, would not be payable to the receiver, but would be immediately payable to the complainant as mortgagee.

Furthermore, the Supreme Court of this District had theretofore decided that the title to the land is in the United States, and though that question has been taken on appeal to the Supreme Court of the United States, and there argued and submitted, the complainant taking no part therein and not even having appeared and set up any claim in the cause, it can not be assumed in advance that the decision will be reversed. There ought to be some very cogent reason for appointing a receiver, at the instance of private parties, for property which has been adjudged to belong to the United States, and the situation of the title in that regard certainly justified the court in considering that no special advantage was to be obtained by appointing a receiver of this unimproved land.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. The first question is, Whether a receiver ought to have been appointed? We entirely agree with the court below that the facts of this case did not warrant the appointment of a receiver. As stated in the decree, it is shown that all the improvements on the realty had been destroyed by fire, and that there was no rent or income receivable from the property. There was nothing, therefore, to create a necessity for the office of a receiver. But apart from this, the mortgage itself had provided a summary mode of taking possession and disposing of the property, in default of payment by the mortgagor. There is no charge of wilful waste of the property, and the power given by the mortgage to the trustee, "to enter upon the premises or property granted, and to take possession of the whole or any part thereof, and to sell and dispose of all and singular the premises," etc., would seem to render it entirely unnecessary that a receiver

should be interposed. After the lapse of ninety days from the time of default made, this summary and speedy remedy was open and available to the complainant. It is a well settled principle that a receiver will not be appointed when the mortgagee, or a trustee representing mortgage bond-holders, has a complete and adequate remedy at law in respect to the possession and of the matters on account of which the appointment of a receiver is sought. Therefore, if the mortgage authorizes the trustee upon a default to take possession and to collect all tolls, rents and profits of the mortgaged premises, a receiver will not be appointed for the mere purpose of obtaining possession pending a foreclosure suit, when it is not shown that the trustee has attempted to obtain possession of the property by entry or by suit at law. Jones Corp. Bonds and Mortgages, Sec. 436. In this case, it is shown that after default there was an attempt to obtain the possession by the Trust Company, but by process and in a manner not authorized by law. *Willis* v. *Eastern Trust and Banking Co.,* 169 U. S. 295. That attempt, therefore, was entirely abortive, because not within the power given by the mortgage.

It is the settled doctrine, therefore, resulting from the principles just stated, as very clearly enunciated by Mr. High, in his work on Receivers, Sec. 555, that " the aid of an injunction and a receiver will not be granted in a contest concerning the possession of real property, when adequate redress may be had at law in the usual forms of action appropriate to such end; and in all such cases, equity will leave the parties to pursue their legal remedy." The whole question as to the state of facts that will or will not justify the appointment of a receiver in respect to the contested possession of real property, is thoroughly discussed, upon full review of the decisions, by Mr. High, in his valuable work on Receivers, in Chap. XIV; and especially in cases of the character of the present, in Sections 555 to 567.

But independently of the grounds just stated for the refusal to appoint a receiver, there is still another ground, and that is, that before the bill in this case was filed, the case instituted by the United States, under a special Act of Congress, against Morris and others, known as the Potomac Flats Case, in which the title to the property here in controversy is involved, was pending in the Supreme Court of this District; and before this case was decided by the court below, the Potomac Flats Case had been decided, and the title to the particular property here in question had been adjudged to be in the United States. An appeal from that decree had been taken to the Supreme Court of the United States, and that appeal has been recently argued, but the case has not yet been decided, and, consequently, the decree appealed from still remains in full force. While that decree remained unreversed, it could hardly have been expected that the court below would have appointed a receiver to claim possession of the premises in hostility to the title adjudged to be in the Government of the United States. This of itself would have been sufficient ground upon which to refuse the appointment of a receiver.

2. The next question presented is that in regard to the rents received by the assignee Johnson from the tenant of the property here in Washington City, before the improvements on the property were destroyed by fire; the complainant claiming to be entitled to those rents from the expiration of the ninety days' notice given and demand made for the surrender of the premises, under the Landlord and Tenants' Act of this District, that is to say, ninety days after the 30th of July, 1894, to the time of filing the bill. That proceeding, however, was ultimately held by the Supreme Court to be wholly without warrant of law. *Willis* v. *Trust and Banking Company, supra.* That demand, therefore, was not a legal demand for the surrender of the premises, within the power given by the mortgage of entry and possession, in

order to make sale under the power. And not being entitled to the possession under the proceeding taken, the complainant as mortgagee was not entitled to the rents of the property; for until the mortgagor, or its assignee, *had been lawfully dispossessed*, it was entitled to receive the rents and profits of the mortgaged premises. This is the established doctrine. *Wilder* v. *Houghton*, 1 Pick. 87; *Mayo* v. *Fletcher*, 14 Pick. 525; *Russell* v. *Allen*, 2 Allen, 42; *Watts* v. *Coffin*, 11 John. 495; *Chinnery* v. *Blackman*, 3 Douglass, 391; *Hughes* v. *Edwards*, 9 Wheat. 500.

In the case of *Teal* v. *Walker*, 111 U. S. 242, the Supreme Court of the United States, in considering this question, say: "We believe that the rule is, without exception, that the mortagee is *not entitled* to demand of the owner of the equity of redemption the rents and profits of the mortgaged premises, until he takes *actual possession*. In the case of *Moss* v. *Gallimore*, 1 Doug. 279, Lord Mansfield held that a mortgagee, after giving notice of his mortgage to a tenant in possession holding under a lease older than the mortgage, is entitled to the rent in arrear at the time of the notice, as well as to that which accrues afterwards. This ruling has been justified on the ground that the mortgagor, having conveyed his estate to the mortgagee, the tenants of the former became the tenants of the latter, which enabled him, by giving notice to them of his mortgage, to place himself to every intent in the same situation towards them as the mortgagor previously occupied. *Rawson* v. *Eicke*, 7 Ad. & El. 451; *Burrows* v. *Gradin*, 1 Dowl. & L. 213.

"Where, however, the lease is *subsequent* to the mortgage, the rule is well settled in this country, that, as no reversion vests in the mortgagee and no privity of estate or contract is created between him and the lessee, he can not proceed, either by distress or action, for the recovery of the rent. *Mayo* v. *Shattuck*, 14 Pick. 533; *Watts* v. *Coffin*, 11 John. 495; *McKircher* v. *Hawley*, 16 Id. 289; *Sanderson* v. *Price*, 1 Zabr. 637; *Price* v. *Smith*, 1 Green's Ch. 516." The same prin-

ciple is laid down in Bacon's Abridgement, Tit. Mortgage C., and in 4 Kent Com. 157.

And in the case of *Willis* v. *Eastern Trust and Banking Company*, 169 U. S. 295, the case involving the right of the present complainant to proceed under the Landlord and Tenants' Act to recover the possession of the mortgaged premises, the Supreme Court say :

" Until the mortgagee takes *actual possession* the mortgagor is not liable, without an express covenant to that effect, to pay rent, and is entitled to take the rents and profits to his own use.   Citing *Teal* v. *Walker, supra*, and *Freedman's Sav. Co. v. Shepherd*, 127 U. S. 494, 502.

"The result is that the plaintiff is not entitled to maintain this process, but must be left, so far as the aid of a court of justice is requisite to secure the rights conferred by the mortgage, to the appropriate remedy of a writ of ejectment, or a bill of foreclosure.   Comp. Stat. D. C., Ch. 48, Sec. 1 ; Ch. 55, Sec. 10; *Hogan* v. *Kurtz*, 94 U. S. 773; *Hughes* v. *Edwards*, 9 Wheat. 489."

The complainant never having received the actual possession of the property, it has no claim to the rents and profits that have been received by Johnson, as assignee of the Ice Company, and therefore the court below was quite right in decreeing that the complainant was not entitled to any accounting for and in respect to such rents.

3. The next question is as to the liability of Johnson as assignee of the Ice Company to account for and pay over, for the benefit of the bondholders, the insurance money received by him as assignee of policies obtained by him on the mortgaged property, with assets derived from the Ice Company, the mortgagor.   Johnson claims and contends that this insurance was not obtained in execution of the covenant contained in the mortgage, for the benefit of and as additional security to the bondholders, but was obtained by him as assignee for the benefit of the creditors generally of the Ice Company, including, of course, the bondholders,

as part of such creditors. But the complainant contends that whatever may have been the intention or understanding of Johnson as assignee, in obtaining the policies and paying the premiums for the risks out of the assets of the Ice Company, he was only doing what his principal or assignor was bound to do by the covenant in the mortgage, and that the insurance money, in contemplation of both law and equity, inures, by way of priority, to the bondholders, under the covenant. It is certainly true that Johnson does not occupy the position of a *bona fide* purchaser without notice. He is in the shoes of the Ice Company, and can occupy no better position than the assignor itself, with respect to the property assigned. His relation to the assignor is of a representative nature. By taking the assignment for the benefit of all the creditors, he did not extinguish or modify the covenant to insure, nor did he relieve the property of the charge to sustain, at all times, the insurance on the property for the protection and as an additional security of the bonds held under the mortgage. The insurance was a part, and a very important part, of the scheme of security for the redemption of the bonds; and as such it should not be impaired or avoided by placing the property in the hands of an assignee. The property itself was charged with the obligation of maintaining the insurance, and Johnson taking the property in his representative capacity, and placing himself in the position of his assignor, took the property *cum onere.* Having assets of his assignor sufficient to pay the premiums for the insurance required by the covenant, a court of equity would compel him to effect and maintain the insurance as required by the covenant. This principle is well illustrated by the case of *Holmes* v. *Buckley*, Equity Cases, Abridged, 26. In that case an assignee in fee was compelled by a court of equity to fulfill the covenant made by his assignor, to keep open and in repair a water course, granted by the latter out of the land. And when a covenant is capable of running

with the land, its burden will, of course, pass to the assignee of the legal estate, although merely a trustee; but equity in this, as in other cases, considers him as a mere instrument, and holds the parties really benefited as the parties answerable. *Berry* v. *McMullen*, 17 Sergt. & R. 84.

But it is contended on the part of the defendants, Johnson and the Ice Company, that a covenant to insure and keep insured improvements on real estate, is a mere personal covenant, and does not attach to and run with the land. This, as a general proposition, may be conceded. But whether a covenant to insure and keep insured buildings on real estate runs with the land or not, depends upon the special object and terms of the covenant. There is no doubt that it is entirely competent to the parties, by apt and express terms, to charge such covenant upon the land, and to make it run with the land and to create a burden thereon in the hands of grantees or assignees; and if it can be done by express terms, there is no reason for saying that it can not be done, upon fair and reasonable implication, to accomplish the objects and purposes of the parties. The object of the covenant in this case is plain enough, and so the terms in which it is expressed. The American Ice Company expressly covenants to keep the property *at all times insured*, in such amounts as shall *reasonably protect* all the insurable property, payable, in case of loss, to the trustee, as its interest should appear; and in case of loss the insurance money might be applied by the trustee *toward the renewal of, or addition to, the property destroyed or injured*, or it might be, at the option of the trustee, placed in a sinking fund for the redemption of the bonds.

It is very clear, that, by the terms of the covenant, it had relation to the land, and its principal object was to keep and maintain the buildings on the property in condition for carrying on the ice business. This was the great object of the insurance required, as means of security to the bondholders. Without this, the property, by fire, might be rendered of

little value, and the bondholders be left without security. By means of the insurance it was intended that the property should be maintained as security; and hence it was provided, primarily, that the insurance money might be expended in renewal of or adding to the buildings. In such cases it has been repeatedly held, that the covenant does run with the land, at least in an equitable sense; and where an insurance has been obtained, though by an assignee, and a fire has occurred, and the insurance money has been received, a court of equity has held that the insurance money should be applied for the benefit of those for whose protection the original covenant was made.

In the case of *Vernon* v. *Smith*, 5 Barn. & Ald. 1, 7, an action at law, it was held that a covenant to insure against fire of the premises situated within the weekly bills of mortality, as prescribed by the statute, was a covenant that ran with the land,—the insurance money being required to be expended in restoring or repairing the building. In that case, Lord Chief Justice Abbott said: "A covenant to lay out a given sum of money in rebuilding or repairing the premises, in case of damage by fire, would clearly be a covenant running with the land, that is such a covenant as would be *binding on the assignee of the lessee*, and which the assignee of the lessor might enforce. Here the defendant does not covenant expressly in those words, but only that he will provide the means of having 800*l.* ready to be laid out in rebuilding the premises in case of fire. But connecting that covenant with the act of Parliament, the landlord has a right to say that the money, when recovered, shall be so laid out. It is, therefore, as compulsory on the tenant to have the money laid out in rebuilding, and as beneficial for the landlord, as if the tenant had expressly covenanted that he would lay out the money he received in respect of the policy upon the premises. For these reasons, I think that this is a covenant running with

the land," etc. And the other judges of the King's Bench concurred in that opinion.

In the well known case of *Thomas* v. *Vonkapff*, 6 Gill & John. 372, the principle is applied to a state of facts somewhat different but analogous to the facts of the present case; but the principle would seem to be fully applicable to the facts here presented. There the mortgagor covenanted that he would at all times during the existence of the mortgage lien, at his own proper cost and charge, cause and procure the insurance on the premises against loss by fire, already effected, to be kept up and renewed; and that, in case of loss by fire, the sum insured to be immediately applied to rebuilding, replacing, and putting the said property in good order and condition, so that the mortgagee, his heirs, etc., shall, in case of loss by fire, be benefited by such insurance, or participate in the benefit thereof, to the extent of his aforesaid lien. On that state of case, it was held that the covenant to insure or keep insured did run with the land; and that the design of the covenant was, by the insurance, always to have a fund for re-establishing the premises, so that the security should not be in any manner diminished. That the insurance was one for the benefit of the mortgagee, to the extent of his lien; and that as the mortgaged property was clothed with a trust in reference to this fund, the legal representatives of the mortgagor must also take it subject to the trust. And the court in its opinion said: "When the mortgagor received the insurance money, a court of equity would have considered him in the light of a trustee of the fund, and would have caused the whole of it, or such parts thereof as might be necessary to restore the premises to their former situation, to be expended in rebuilding. The mortgagee had undoubted rights in the fund thus arising, which could not be overreached by Thomas or his creditors, and if the property was thus clothed with a trust, his legal representatives must also take it subject to the same trust." And in concluding their opinion the court say: "We have said

that although a lien existed, it gave no right to the possession of the fund, as against Thomas; the design being to apply it for the purpose of reinstating the premises. But the facts show that the lien can not in the terms of the contract be specifically enforced, owing to the sale of the mortgaged premises. A court of equity, however, is not on this account powerless. It must administer relief in the only manner in which it can now be done. As the leading object in effecting the insurance was exclusively a beneficial one to the mortgagee, its great spirit and object will be effectuated by decreeing him the fund. The mode only, of giving relief, will be changed, and that has become inevitable."

In the present case, unlike the case just referred to, the covenant requires the money, in case of loss by fire, to be paid over to the trustee, to be by it applied in the manner prescribed.

In the case of *Wheeler* v. *Insurance Co.*, 101 U. S. 439, it was held by the Supreme Court to be a well settled principle, by many decisions in this country, that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises, *for the better security* of the mortgagee, the latter will have *an equitable lien* upon the money due on a policy taken by the mortgagor to the extent of the mortgagee's interest in the property destroyed; and the court cites with approval, and in support of the proposition stated, the case of *Thomas' Admr.* v. *Vonkapff's Exr.*, 6 Gill & John. 372.

The case of *In re Sands Ale Brewing Co.*, 3 Biss Rep. 175, is quite in point with the present case. There the brewing company had borrowed money and gave a mortgage of its property to secure payment. The mortgage contained a covenant requiring an insurance to be made, and the policy to be assigned to the mortgagee; and that in the event that the premises should be injured or destroyed by fire, the mortgagee should have the right to collect the insur-

·ance money and apply it, in his discretion, either in the discharge of the mortgage debt, or in repairing or rebuilding the buildings injured or destroyed.     The insurance was made and assigned as required by the terms of the covenant. And when the policy expired, a new policy was taken out, but not assigned to the mortgagee.     The mortgagor had become bankrupt, and the buildings were destroyed by fire, and the assignee in bankruptcy had collected a part of the insurance money, and denied the right of the mortgagee to receive it.     Whereupon the trustee under the mortgage or deed of trust filed a petition, asking that the insurance money, so collected and held by the assignee in bankruptcy, should be required to be paid over to the trustee to be applied in satisfaction of the mortgage debt.     That application was granted, the court holding that the mortgagee was entitled to the fund.     And in the course of its opinion, the court said: "The assignee in this case can hold nothing that the grantor in the trust deed could not have held, if bankruptcy had not intervened.     His relation is purely representative.     Creditors who have trusted the bankrupt must be held to have done so with full notice of the covenant to insure, and of the legal and equitable effect of the covenant. The covenant to insure runs with the land as much as a covenant to repair and rebuild, or for another term."

The same principle, though predicated of facts somewhat different, is announced in the cases of *Miller* v. *Aldrich,* 31 Mich. 411; *Ellis* v. *Crutzinger,* 27 Mo. 311; *Nichols* v. *Baxter,* 5 R. I. 491; *Masury* v. *Southworth,* 9 Ohio St. 348.

The fact that the insurance was taken out by the assignee for the benefit of all the creditors of the assignor, and not by the assignor itself, can, as is shown by some of the cases referred to, make no manner of difference.     If the insurance had been obtained by the Ice Company, instead of its assignee with the assets of the former, there could be no question of the right of the bondholders to have the money applied, as required by the covenant, as against the general

creditors of the mortgagor. If the covenant runs with the land, as the authorities would seem to make clear, and the assignee took the property subject to that charge, though he may have taken out the policies for the professed benefit of all the creditors, including the bondholders, yet, by force of the covenant, the bondholders are entitled to priority in the application of the fund. We are of opinion, therefore, that the court below was in error in denying the right of the bondholders to this insurance fund.

4. With respect to the question made as to the validity of the proceedings of the trustee in selling or attempting to sell the property situate in Maine, and the application of the proceeds of that sale, we shall not go into any extended examination. There is no fraud charged, and no such irregularities shown, as furnish the foundation for impeaching the fairness and good faith of the sale that was ultimately made. The deed of trust was made in Maine, and the sale of the property, situated in that State, was made there; and we must suppose, in the absence of any affirmative evidence to the contrary, that the sale was legally and fairly made. Both the law of the contract, and of the *situs* of the property sold, was that of Maine; and it does not appear that the sale has ever been questioned in that jurisdiction. We must therefore assume that the sale was validly made, according to the law and practice of that State.

But the question of the distribution and application of the proceeds of sale may affect, under the terms of the deed of trust, the American Ice Company and its general creditors, claiming under the general assignment to Johnson. Hence they have a right to a strict account of the proceeds of sale of the property in Maine. As to what allowances for disbursements, expenses, commissions, etc., are proper, will be for the court here to decide, in order to make proper distribution of the proceeds of sale of the property in this jurisdiction. That such exhibits should be made, and a proper account stated as preliminary to the decree of sale of the

property here, we think is proper and necessary. Until this account is stated it can not be determined with certainty for what amount the decree for foreclosure and sale should be passed, or what amount of indebtedness is still due.

The sale of the property, however, under any decree that may be passed, should not be allowed to be made until after the case of *Morris and others* v. *United States,* known as the Potomac Flats Case, now pending in the Supreme Court of the United States, shall have been decided; for otherwise the sale of the property made subject to the final decision of that case, could not be other than a mere speculation, and would most likely result in obtaining nothing more than a mere nominal sum.

Upon review of the whole case, we are of opinion that the decree of the court below must be reversed on both appeals, and the cause be remanded for further proceedings; and that the costs of said appeals be equally divided between the parties appellants, and that they pay accordingly; *and it is so ordered.*

*Decree reversed and cause remanded.*