**In re 1301 CONNECTICUT AVENUE ASSOCIATES, Debtor.**

**Civ. A. No. 90–2105 SS.**

United States District Court, District of Columbia.

April 3, 1991.

Jack Gohn, Whiteford, Taylor & Preston, Baltimore, Md., for appellant Resolution Trust Corp.

Jeffrey Tarkenton, David & Hagner, P.C., Washington, D.C., for appellee 1301 Connecticut Ave. Associates.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case comes before the Court on appeal from a decision of the Bankruptcy Court. The appellee, 1301 Connecticut Avenue Associates ("Associates"), has filed a voluntary petition for protection under Chapter 11. One consequence of this petition is an automatic stay of actions by creditors. In an Amended Decision filed on August 14, 1990, the Bankruptcy Court denied a motion by the appellant Resolution Trust Corporation (RTC) for relief from certain provisions of this automatic stay. 117 B.R. 2. The RTC now appeals this decision. Because the decision of the Bankruptcy Court was well-founded on the facts of this case and on the applicable law, it will be affirmed.

*Background*

Associates was formed for the purpose of acquiring, rehabilitating, and operating a commercial property located at 1301–1317 Connecticut Avenue, N.W. in Washington, D.C. Associates holds a long-term lease to this property, which is owned by Washington Property Limited Partnership ("WPLP"). In 1986, Associates borrowed $12.5 million from Baltimore Federal Financial, F.S.A. ("BFF") to finance rehabilitation and start-up costs. As security for the loan, Associates pledged its interest in the lease, and WPLP pledged its fee interest in the property.

As additional security, both Associates and WPLP agreed to pledge to BFF all rents generated by the Connecticut Avenue property. This pledge was memorialized in a Deed of Trust executed in connection with the construction loan agreement. Under the terms of this Deed, Associates and WPLP assigned to BFF "[a]ll leases, rents, issues, and profits of the Property." The Deed further provided that "so long as no default shall exist," Associates and WPLP would have the right to collect rents from the property's tenants. Associates and BFF also executed an Assignment of Leases containing similar provisions. The effect of these documents was to give BFF the right to claim the rents paid by the property's commercial tenants in the event

that Associates failed to meet its repayment obligations under the loan agreement.

On April 21, 1987, BFF informed Associates that it was in default under the loan agreement. On February 8, 1988, BFF informed Associates and WPLP that, due to default, the construction loan had matured in its entirety, and that BFF intended to commence foreclosure proceedings. Associates sought Chapter 11 protection eight days later, after which BFF filed a claim against Associates in the Bankruptcy Court for approximately $15.4 million.

Subsequently, the RTC was appointed as receiver for BFF pursuant to orders of the Director of the Office of Thrift Supervision. In this capacity, the RTC has succeeded to all rights and assets of BFF, including the claims pressed in this action.

*The Decision of the Bankruptcy Court*

The RTC appeals from the denial by the Bankruptcy Court of two motions. By the first motion, the RTC sought an order permitting it to collect rents from the Connecticut Avenue property's tenants. The second motion requested an order prohibiting Associates from paying rent to WPLP, and requiring instead that Associates pay rent to the RTC.

The Bankruptcy Court denied both motions. It held that the assignments to BFF of rents and leases "were intended only to pledge rents as a security interest protecting against default and were not intended as absolute assignments." *In re Connecticut Avenue Associates*, 117 B.R. 2, 5 (Bankr.D.D.C.1990). The import of this distinction is that, in the case of a security assignment, the RTC must perfect its interest in the rents before it may institute an action to collect them. While rents assigned absolutely would be immediately collectible, the security assignment held by the RTC is enforceable only after perfection.

The Bankruptcy Court further held that the RTC has not perfected its interest. To do so would require possession of the property or appointment of a receiver. *See* Op. at 10. The RTC has neither taken possession of the property nor sought appointment of a receiver.

*The Nature of the Assignment*

The Bankruptcy Court's interpretation of the contractual agreements among BFF, Associates, and WPLP is a conclusion of law that this Court must review *de novo*. *In re St. Charles Preservation Investors, Ltd.*, 112 B.R. 469, 471 n. 2 (D.D.C.1990). Nonetheless, the Bankruptcy Court's opinion is thorough and well-reasoned and this Court endorses its conclusions.

 The Deed of Trust and the Assignment of Leases created a security assignment of rents. This assignment was intended to ensure that the loan to Associates was fully secured by Associates' and WPLP's entire interest in the underlying property. Under the law of the District of Columbia, an assignment created for security purposes gives rise to an interest that cannot be perfected until the assignee directly or indirectly takes possession of the property. In *Hardee v. American Security Trust Company*, 77 F.2d 382 (D.C.Cir. 1935), the court examined the right of a security assignee to rents, holding that such a right cannot be exercised apart from a broader effort to take possession of the property.

> Under the terms of the deed of trust, the debtor was entitled to the possession of the premises and to enjoy the rents and profits of possession until a default should be made in the terms of his obligation.... It is the established rule that in such case the mortgagee does not become entitled to the rents collected by the mortgagor. In *Freedman's Sav. & T. Co. v. Shepherd*, it is held that *when a mortgage contains no provision for the payment of rents and profits to the mortgagee while the mortgagor remains in possession, the mortgagee is not entitled—as against the owner of the equity of redemption—to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf, even though the income may be expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon failure by the*

*mortgagor to perform the conditions of the mortgage.*

77 F.2d at 385 (citation omitted) (emphasis added); *see also Freedman's Saving and Trust Co. v. Shepherd,* 127 U.S. 494, 503, 8 S.Ct. 1250, 1254, 32 L.Ed. 163 (1888) ("Even if the deed had expressly pledged the income as security for the debts named, the mortgagor . . . would have been entitled to the income, until, at least, possession was demanded under the deed.").

This case is controlled squarely by *Hardee* and *Freedman's.* The Deed of Trust and the Assignment of Leases gave BFF a right in the rents, but this right was provided only as security for the underlying mortgage, and therefore becomes effective only when the property is placed under a receivership. As the Bankruptcy Court noted, the parties chose not to create an "absolute assignment" or a "present interest" in favor of the lender. Op. at 7–8. The parties could have devised structures to make the rents from the property's tenants themselves serve as the means of repayment. The parties chose not to employ such structures. They did not provide that the rents should be payable to BFF directly, or that the rents should go into an escrow account, from which mortgage repayments would be deducted before the balance would be paid over to Associates. Instead, the Bankruptcy Court found as a matter of fact that the parties intended for the rents to serve as security for the mortgage, collectible by BFF only in the event of default. This finding of fact is accepted by this Court in the absence of proof of clear error. Where parties create a security assignment, as they have in this case, the clear rule of law in the District of Columbia is that the assignment becomes effective only upon the lender's direct or indirect possession of the underlying mortgaged property.

This rule of law is solidly based in principles of equity and public policy. As a practical matter, permitting the RTC to appropriate the entire income stream from the property would make Associates' reorganization difficult, if not impossible. The RTC has a secured interest in the rents, as well as in the property itself, but the way to protect these interests is through appropriate proceedings in the Bankruptcy Court. These proceedings would be short-circuited by diverting the rents to the RTC.

Not only would the RTC's claim defeat Associates' invocation of Chapter 11, but it would put the Connecticut Avenue property's tenants in a precarious position. It would be unfair to require these tenants to pay rent to an entity that would have no responsibility for providing services or maintaining the property. As the Bankruptcy Court for the District of Massachusetts has observed:

> Rents, furthermore, do not spring from the ground. Real estate must be maintained and serviced to produce them, much as a contract must be performed to bring payment under it. We do not suggest that the Bank is improperly attempting to reap what it has not sown. A secured party is entitled to the fruits of its Debtor's labors if those fruits constitute the collateral. But here the Bank wants a continuum of fruits while the Debtor remains in harness without sustenance. Equitable considerations hardly support such proprietorial serfdom.

*In re Prichard Plaza Associates Ltd. Partnership,* 84 B.R. 289, 298 (Bankr.D. Mass.1988) (quoted in Op. at 7).

The RTC cannot perfect its interest in the Connecticut Avenue property's rents until a receiver is appointed for the property. This holding does not deny the RTC's right to the rents, but it does insist that entitlement to the rents remain conjoined with possession of the property. If the RTC wishes to collect rents from the Connecticut Avenue property, its proper remedy is to seek appointment of a receiver.

The RTC has not sought appointment of a receiver for the Connecticut Avenue property. Because it has not done so, the Bankruptcy Court properly denied the RTC's motions for relief from the automatic stay.[1]

---

**1.** The Bankruptcy Court further held that the RTC is not entitled to a receiver for the Connecticut Avenue property under the standards of *Totten v. Harlowe,* 90 F.2d 377 (D.C.Cir.), *cert.*

**4**

An appropriate order accompanies this opinion.

### ORDER

Upon consideration of appellant's appeal of the decision of the Bankruptcy Court in this case, appellee's response thereto, oral argument of counsel, and the entire record in this case, it is this 4 day of April 1991 hereby

ORDERED that the decision of the Bankruptcy Court is AFFIRMED.

---

*denied,* 301 U.S. 711, 57 S.Ct. 945, 81 L.Ed. 1364 (1937). This Court need not review the Bankruptcy Court's finding, because the RTC has not sought a receiver. At oral argument, counsel for the RTC indicated to this Court that the RTC

did not at this stage desire appointment of a receiver. Until the RTC initiates a receivership proceeding, it is clear that it is not entitled to the rents from the property.