**In re 5028 WISCONSIN AVENUE AS-
SOCIATES LIMITED PART-
NERSHIP, Debtor.**

**5028 WISCONSIN AVENUE ASSO-
CIATES LIMITED PARTNER-
SHIP, Plaintiff,**

**v.**

**COPY KING, INC. and Colony NYRO
Partners, L.P., Defendants.**

Bankruptcy No. 92–01052.
Adv. No. 93–0413.

United States Bankruptcy Court,
District of Columbia.

May 5, 1994.

Roger Frankel, Lawrence R. Freedman, Adam M. Shayne, Washington, DC, for 5028 Wisconsin Ave. Associates Ltd. Partnership.

Leslie Plaskon, New York City, Gage R. Johnson, Washington, DC, for Colony NYRO Partners, L.P.

Stephen C. Hosea, Greenbelt, MD, for Copy King, Inc.

### DECISION RE MOTIONS FOR SUMMARY JUDGMENT

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This is a dispute between the debtor, 5028 Wisconsin Avenue Associates Limited Part-

nership, and its mortgagee[1] concerning the entitlement to rents owed by the debtor's tenant, Copy King, Inc. The disputed rents have been held by the tenant in an escrow account pending resolution of the dispute. The court holds that the mortgagee is entitled to the rents for application to its claim against the debtor.

## I

On June 10, 1992, after the debtor had defaulted on the mortgage loan, the mortgagee sent the tenant a letter demanding that the tenant pay all future rent to the mortgagee. The mortgagee invoked the terms of the Deed of Trust and the Assignment of Leases that the debtor had executed to secure the loan. On the same day, the mortgagee sent letters to the debtor and its property manager terminating the debtor's license to collect rents contained in the Deed of Trust and the Assignment of Leases. The debtor instructed the tenant to disregard the mortgagee's letter and to continue paying rents to the debtor. Commencing July 1, 1992, the tenant began escrowing its rent payments.

On August 6, 1992, the mortgagee gave notice of a foreclosure sale set for September 22, 1992, although the mortgagee never obtained the appointment of a receiver. On September 21, 1992, a general partner of the debtor filed the involuntary petition commencing this case. On November 27, 1992, the court entered an order for relief.

The court has granted relief from the automatic stay to permit foreclosure and that foreclosure sale may have been consummated. The court has found the debtor's real property to be unnecessary for an effective reorganization and the mortgagee's deficiency claim should exceed the rents at stake in this and similar adversary proceedings against other tenants of the debtor.

## II

The language of the Deed of Trust and the Assignment of Leases controls the outcome. The Deed of Trust granted the mortgagee a security interest in rents, giving the debtor a license to use the rents as long as it was not in default. Deed of Trust, pp. 5 and 19.

Upon revocation of the license, the mortgagee was to become responsible for the control, care and management of the premises and for performance of the debtor's obligations as lessor under the leases. Deed of Trust, p. 19, sec. 7.

The Assignment of Leases contained a similar assignment for security purposes. Assignment, pp. 1–2. It further provided that upon a default by the debtor, the debtor "does further specifically authorize and instruct each and every present and future lessee of the whole or any part of the Premises to pay all unpaid rents agreed upon in each tenancy to Bank upon receipt of demand from Bank to so pay the same." Assignment, sec. 13. In moving for summary judgment, the mortgagee points to section 13 of the Assignment of Leases, combined with the mortgagee's prepetition demand to the tenant for all rent payments.

## III

There is little District of Columbia law on the enforcement of assignments of rent, and none at all, at least none that this court has found or the parties have cited, on the effect of language entitling the mortgagee, upon default, to demand payment from the tenants. The cases directly concerning assignments of rent date mostly from the last century and are to some extent contradictory. Most important for our current purposes, however, they all involve deeds of trust that either did not refer to the rents or pledged the rents without providing any specific mechanism for the mortgagee to obtain the rents shy of possession of the property. In these cases, the courts held that the mortgagee had not perfected its assignment absent possession of the property.

In *Teal v. Walker*, 111 U.S. 242, 4 S.Ct. 420, 28 L.Ed. 415 (1884), the Supreme Court ruled against a mortgagee who sought damages from the owner of the real property (who was not obligated personally on the mortgage note) for rents collected between the date the mortgagee demanded possession of the premises and the date of foreclosure.

---

1. The defendant Colony NYRO Partners, L.P. is actually a successor in interest to the mortgagee. For purposes of this decision, the mortgagee and its successors in interest are each referred to as the mortgagee.

The Court rejected the argument that language in the deed of trust entitling the lender to take possession upon default entitled the mortgagee to the rents collected after default and demand for possession. The Court reasoned that a mortgagee is always entitled to possession after default, and so the contractual language did not provide any additional rights to the mortgagee than is normally the case under a deed of trust. Thus, the contractual language did not alter the general rule that the party in possession is entitled to the rents.

Nonetheless, the case quotes approvingly from an earlier authority: "Although the mortgagee may assume possession by ejectment at his pleasure, and ... may give notice to the tenants to pay him the rent due at the time of the notice, yet, if he suffers the mortgagor to remain in possession or in receipt of the rents, it is a privilege belonging to his estate that he cannot be called upon to account for the rents and profits to the mortgagee, even although the security be insufficient." 111 U.S. at 249, 4 S.Ct. at 424 (*quoting* Bac.Abr. tit. "Mortgage," C). Thus, the Court acknowledged that demand on the tenants could accord a mortgagee a right to the rents,[2] at least where the mortgagor does not subsequently obtain possession of the rents.

The same possibility was left open in *Freedman's Saving and Trust Co. v. Shepherd*, 127 U.S. 494, 8 S.Ct. 1250, 32 L.Ed. 163 (1888), a case involving a deed of trust that pledged the property, but not the rents:

> It is, of course, competent for the parties to provide, in the mortgage, for the payment of rents and profits to the mortgagee, while the mortgagor remains in possession. But when the mortgage contains no such provision, and even where the income is expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon the failure of the mortgagor to perform the conditions of the mortgage, the general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken, in his behalf, by a receiver, or until, in proper form, he demands and is refused possession.

127 U.S. at 502–03, 8 S.Ct. at 1254 (citations omitted; emphasis added).

In *Eastern Trust and Banking Co. v. American Ice Co.*, 14 App.D.C. 304 (D.C. 1899), the court held that a mortgagee had no right to the rents accruing from the mortgaged property between the date the mortgagee demanded possession and the date of the foreclosure sale. The court wrote: "The complainant never having received the actual possession of the property, it has no claim to the rents and profits ..." 14 App.D.C. at 329. In reaching this conclusion, the court quoted from *Willis v. Eastern Trust and Banking Co.*, 169 U.S. 295, 310, 18 S.Ct. 347, 353, 42 L.Ed. 752 (1898): "Until the mortgagee takes actual possession the mortgagor is not liable, *without an express covenant to that effect*, to pay rent, and is entitled to take the rents and profits to his own use." (Emphasis in original deleted, new emphasis added.) *Willis* cited *Teal v. Walker* and *Freedman's Savings* for this proposition.

In *Totten v. Harlowe*, 90 F.2d 377 (D.C.Cir.1937), the question was whether the mortgagee was entitled to the appointment of a receiver to prevent the mortgagor from keeping the rents that would accrue pending foreclosure. The court stated that the rule in the District of Columbia is that a mortgagor in possession is entitled to retain the rents. (It cited for this proposition the case of *Phoenix Mut. Life Ins. Co. v. Grant*, 3 MacArthur (10 D.C.) 220 (1878), in which the court pointedly noted that the mortgage did not mortgage the rents and profits of the property.) This rule, the court wrote, "grows out of the fact that it is only the property itself, and not the rents and profits, which is pledged." 90 F.2d at 380 (citing

---

**2.** The Court dealt with the mortgagee's right to demand rents under the rule of *Moss v. Gallimore*, 1 Doug. 279, under which a mortgagee may demand rents from tenants who were tenants when the mortgage was conveyed. This rule appears to rest not on the existence of a security interest in the rents but in ancient doctrines of privity, making the tenants the mortgagee's tenants (at least in states following a title theory of mortgages). *See Osborne on Mortgages* (2d ed. 1970) §§ 141–142 and 146. But the important point is that the law did not flatly prohibit the mortgagee from being given rights in rents and indeed in certain instances already gave the mortgagee rights in rents.

*Kountze v. Omaha Hotel Co.*, 107 U.S. 378, 2 S.Ct. 911, 27 L.Ed. 609 (1883)).[3] Nonetheless, the court held that, because the property was inadequate to satisfy the debt and the debtor was insolvent, the mortgagee was entitled to appointment of a receiver so as to "preserve not only the corpus but the rents and profits for the satisfaction of the debt." *Id.* The decision did not address the question of whether the parties may contract that the mortgagee immediately obtain the rents on a default by making demand on the tenants.

*Hardee v. American Security & Trust Co.*, 77 F.2d 382 (D.C.Cir.), *cert. denied*, 296 U.S. 595, 56 S.Ct. 110, 80 L.Ed. 421 (1935), followed *Freedman's Saving* and *Eastern Trust v. American Ice*, finding that a mortgagee was not entitled to the rents collected while the mortgagor remained in possession, the mortgage having provided for a foreclosure sale as the remedy for default.

*Democratic Central Committee v. Washington Metropolitan Area Transmit Commission*, 21 F.3d 1145 (D.C.Cir.1994), followed *Eastern Trust v. American Ice* and held that a mere demand for possession of mortgaged premises following a default was insufficient, without legal proceedings, to give a mortgagee the right to possession of the real property and the rentals of the property. The court emphasized that nothing in the deed of trust provided for the mortgagee's entitlement to possession upon a mere demand. *Democratic Central Committee* at 1149–50. The court even suggested that "an absolute assignment of rents to be effective immediately upon default" might suffice to permit the mortgagee to obtain possession of the property (or its rents) upon a mere demand. *Id.* at 1150. The deed of trust involved in *Democratic Central Committee* contained no express covenant allowing the mortgagee to demand rents from tenants on a default.

■ The case law contains no precedent in which the mortgagor and mortgagee have not only provided for a pledge and assignment of the rents and leases, but also covenanted to permit the mortgagee, upon default, to notify the tenants to make payment directly to the mortgagee. However, this contractual provision appears to be precisely the type of (1) "provision for the payment of rents and profits to the mortgagee, while the mortgagor remains in possession" or (2) "express covenant" for the mortgagee to be entitled to the rents alluded to in *Hardee*, 77 F.2d at 385; *Freedman's Saving*, 127 U.S. at 502, 8 S.Ct. at 1254, and *Eastern Trust v. American Ice*, 14 App.D.C. at 329. Accordingly, this court finds that the mortgagee perfected its right to the rents as its collateral by making demand on the tenants, prepetition, in accordance with the rights explicitly granted to it in the loan documents.[4]

## IV

■ This case presents a situation factually distinct from that of *In re 1301 Connecticut Ave. Assoc.*, 117 B.R. 2 (Bankr.D.D.C. 1990), *aff'd*, 126 B.R. 1 (D.D.C.1991). In *1301 Connecticut*, the court dealt with virtually identical loan documents, but the mortgagee apparently never made a demand on the tenants that they pay rents to the mortgagee. In those circumstances, the mortgagee could point to no applicable contractual provision that had given effect to the mortgagee's inchoate security interest in rents. Thus, the mortgagee, as of the date of the bankruptcy petition, was in no better position than a mortgagee with only a general security interest in rents. District of Columbia law relegates a mortgagee with only a general security interest in rents to sue for a receiver if the security interest is to have effect. *Hardee*, 77 F.2d at 385.

Consistent with the reasoning set forth above, in *1301 Connecticut* both this court and the district court held that in the absence of some structure for the rents to be paid directly to the mortgagee, the assignment of rents served only as a security interest and that the mortgagee could enforce its security interest "only upon the lender's direct or indirect possession of the underlying

---

3. The specific passages of *Kountze* relied upon appear to be 107 U.S. at 392–94, 2 S.Ct. at 923–25. Nothing in *Kountze* suggests that the mortgage contained an express covenant allowing the mortgagee to demand rents on a default.

4. The court rests its decision on the demand for rents and does not address whether absent a demand for rents the facts of this case would entitle the mortgagee to the rents.

mortgaged property." *1301 Connecticut*, 126 B.R. at 3. However, both courts also observed that the parties were free to contract for direct payment of the rents to the mortgagee. For example, this court observed that "the parties may stipulate that the debtor will instruct the tenants to pay rents directly to the mortgagee." 117 B.R. at 7. Similarly, the district court wrote:

> ... The parties could have devised structures to make the rents from the property's tenants themselves serve as the means of repayment. The parties chose not to employ such structures. They did not provide that the rents should be payable to BFF directly, or that the rents should go into an escrow account, from which mortgage repayments would be deducted before the balance would be paid over to Associates.

126 B.R. at 3.

■ The court sees no meaningful difference between an escrow or "lockbox" arrangement (tenants pay rents to an escrow agent or the mortgagee, which deducts the mortgage payment before any sum goes to the debtor) that starts immediately, and one that starts upon the mortgagee's demand after default. In both instances, the arrangement is a contractual one between the debtor and the lender which permits the lender to take possession of the rents after default without those rents being paid first to the debtor.[5] As discussed above, such an arrangement, explicitly included in the mortgage, appears sufficient to give a mortgagee the right to the rents even absent appointment of a receiver.

If this is permissible through an escrow or lockbox arrangement, there is no reason why the lender should be prejudiced by agreeing that the debtor may have direct access to the rents until the occurrence of a default. No more empty distinction could be drawn than between the contractual arrangement in this case, and one in which tenants pay all rents to the mortgagee, which then returns the rents to the mortgagor unless there has been a default. To make the legal rights of the parties depend on their failure to institute such an expensive and cumbersome mechanism, when the parties have contracted for a simpler equivalent measure, would elevate form over substance and frustrate the clear intent embodied in the mortgage documents.

## V

■ In discussing postpetition perfection under 11 U.S.C. § 546(b) in *1301 Connecticut*, 117 B.R. at 9–11, this court took the analytically wrong turn of focusing on obtaining a receiver as if it were the only means for making effective the mortgagee's inchoate security interest in rents.[6] This court thus failed to consider that an alternative means of achieving choateness might be to make demand for the tenants to pay the rents to the mortgagee, where such a right is created by the explicit terms of the loan documents. The issue of achieving choateness by a demand on tenants is raised here directly, because the lender made a demand on the tenant prepetition.[7]

5. It makes no difference whether the tenants are additional signatories to the contractual arrangement: upon learning of the contract between the debtor and the mortgagee they are bound by the law of contracts to honor the demand. See Restatement (Second) of Contracts § 338(1) (1981) (assignor may modify obligee's duty until, but not after, obligee is notified of assignment); *cf.* D.C.Code *Landlord and Tenant* § 45–1431 ("All grants or conveyances of any manors or rents ... shall be good and effectual, to all intents and purposes ... without any attornment ... Provided, nevertheless, that no such tenant shall be prejudiced or damaged by payment of any rent to any such grantor ... before notice shall be given to him of such grant by the ... grantee.")

6. This court interpreted the term "perfecting" as meaning making the lien choate so as to defeat any later filed security interest in rents. Techni-

cally, § 546(b) addresses any step "that permits perfection to be effective against" intervening creditors. The inquiry thus includes any step to make an already perfected lien choate as against an intervening creditor. Thus, it was arguably misleading to refer to the step of a receivership itself as being one "perfecting" the lien.

7. Arguably, a demand on tenants would come within 11 U.S.C. § 546(b) as a means under District of Columbia law of making the security interest choate in future rents such as to permit the mortgagee's security interest "to be effective against an entity that acquires rights in such property before the date of such perfection." If so, then the exception of 11 U.S.C. § 362(b)(3) to the automatic stay of 11 U.S.C. § 362(a) would apply to permit postpetition perfection. If the demand letter is a form of seizure, then perfection would have to be by way of notice under the second sentence of § 546(b) instead of by way of

When *1301 Connecticut* reached the district court, it similarly focused on the enforcement of the security interest by appointment of a receiver. Apparently there, as in this court, the lender failed precisely to argue that the contractual provision for making demand could be a basis for applying § 546(b) to achieve postpetition choateness. The district court did not even mention § 546(b) in deciding the appeal.

As the exact issue presented here was one not addressed by either the bankruptcy court or the district court in *1301 Connecticut,* the decisions in that case are not decisive precedent.

## VI

Both this court and the district court expressed concern in *1301 Connecticut* about the inequity of any rule that allowed the mortgagee to deprive the debtor of rents with which to operate and maintain the property generating the rents. That concern does not require a different result here.

 Upon the mortgagee making demand on the tenants in this case, the tenants became obligated to honor the contract between the debtor and the mortgagee to pay the mortgagee the rents. However, the arrangement—as in the case of a lockbox arrangement operating from the outset of the loan—remains a security device, not an actual transfer of ownership to the mortgagee, until the rent is actually transferred to the mortgagee for application to the mortgage debt. If a demand is wrongfully made, the mortgagor may so advise the tenants and, in any event, may seek injunctive relief. In any event, District of Columbia law does not include any policies that prohibit the mortgage parties from entering into this type of contract.

 To elaborate further, outside of bankruptcy, once a payment is made directly to the mortgagee, the mortgagee may apply the payment to any delinquent payment due under the mortgage. Inside bankruptcy, the mortgagee's right to continue to collect the rents for application to the mortgage debt is frozen by the automatic stay of 11 U.S.C. § 362. This follows because, as *Democratic Central Committee* makes clear, the District of Columbia is not a "title" jurisdiction, and a deed of trust serves only as a security device with ownership of the rents consequently remaining in the mortgagor until the mortgagee collects them.[8] This distinguishes the District of Columbia from "title" states such as Pennsylvania. *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34 (3d Cir. 1993) (rents of Pennsylvania property were not cash collateral but property of mortgagee).

 Necessarily, under this view of District of Columbia law the court declines to follow decisions in other "intermediate" or "lien" states that accord the debtor no interest in the rents (even as cash collateral).[9]

actual demand letter. These issues, however, are not before the court today and their ultimate resolution is left for another day in a case in which these issues must actually be decided.

8. In the District of Columbia the mortgagor's equity is considered to be the real and beneficial estate. *Democratic Central Committee* at 1153, citing *W.A.H. Church, Inc. v. Holmes,* 46 F.2d 608, 609–10 (D.C.Cir.1931) (citing in turn *Wood v. Grayson,* 22 App.D.C. 432, 445 (1903)). Steps taken to make choate what is otherwise an inchoate security interest in rents do not alter the character of the mortgagee's rights in the rents as security for payment of the debt. What such steps do accomplish is to allow the mortgagee to enforce the security interest and to give the mortgagee priority over subsequent judgment lien creditors in the tenants' future rental payments. *Democratic Central Committee* at 1156–57. The mortgagee's choate security interest in rents remains a security interest (albeit one with priority), not absolute ownership. Once collected by the mortgagee for application to the debt, pursuant to a choate security interest, a rent payment ceases to be the debtor's. But until then, the rents remain the debtor's property albeit payable to the mortgagee pursuant to its choate security interest. Hence, postpetition rents would remain property of the debtor protected by the automatic stay until the stay is terminated.

9. *In re South Pointe Assocs.,* 161 B.R. 224, 227 (Bankr.E.D.Mo.1993); *In re Northwest Commons, Inc.,* 136 B.R. 215, 219–20 (Bankr. E.D.Mo.1991); *In re VIII South Michigan Assocs.,* 145 B.R. 912 (N.D.Ill.1992) (relying on what was only dicta in *In re Century Invest. Fund VIII Ltd. Partnership,* 937 F.2d 371, 375 (7th Cir.1991), stating that perfected security interests in real property and rents do not become property of bankruptcy estate). These decisions misconstrue the Supreme Court's decision in *Butner v. United States,* 440 U.S. 48, 56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), which held that a bankruptcy court may not impose a security interest in rents not provided for by local law. When the mortgagee does have a perfected and

Accordingly, the rents remain available (subject to restrictions discussed below) to apply to the operation and maintenance of the property, thus obviating the concerns expressed in *1301 Connecticut Ave.* that the debtor ought not be deprived of the funds necessary to maintain and operate the mortgaged real estate.

■ Although rents received after the petition remain the debtor's property, they are cash collateral securing the mortgagee (unless the court, after notice and a hearing, orders otherwise under 11 U.S.C. § 552(b) based on the equities of the case) and hence are subject to the use restrictions and other protections of 11 U.S.C. § 363.

■ By the same token, however, the debtor would be entitled to use the cash collateral upon providing the mortgagee adequate protection. Usually, adequate protection can be accorded the mortgagee by devoting the rents to necessary costs of operating and preserving the building so as to continue generating rents. *See In re Sunset Centres Ltd. Partnership,* Misc.Action No. 93–26 (D.D.C.1993) (Penn, C.J.); *In re Ledgemere Land Corp.,* 116 B.R. 338, 343 (Bankr.D.Mass.1990); *In re Willowood East Apts. of Indianapolis II, Ltd.,* 114 B.R. 138, 142–43 (Bankr.S.D.Ohio 1990). The debtor's use may alternatively be authorized under 11 U.S.C. § 552(b) by limiting the mortgagee's security interest based on the equities of the case to rents net of operating and maintenance expenses. *Sunset Centres; In re Cardinal Indus., Inc.,* 118 B.R. 971, 981 (Bankr. S.D.Ohio 1990); *Willowood East Apts.,* 114 B.R. at 143–44.

The important point is that this court's holding will not result in the mortgagee having absolute title to future rents in a bankruptcy case. The debtor will continue to have access to the rents, upon entry of an appropriate cash collateral order, to sustain its operation and maintain the building that is generating the very rents that are cash collateral.

### VII

■ There is no dispute here that the mortgagee is substantially undersecured, far in excess of the rents that are at issue in this and similar adversary proceedings involving other tenants of the debtor. It is also clear that there is no reason to delay application of the rents to the mortgagee's claim. The court has granted relief from the automatic stay to permit the mortgagee to foreclose on the debtor's real property, finding that the property is not necessary for an effective reorganization. Accordingly, the court will direct that the tenant pay over the escrowed rents (and any rents it has failed to escrow after the mortgagee's demand letter and before transfer of title to the real property pursuant to a foreclosure sale) to the mortgagee for application to the mortgage debt.[10]

### VIII

The parties shall submit a proposed judgment consistent with this decision within 15 days of its entry.

choate interest in rents, *Butner* does not require that a debtor's ownership interest in the rents be nullified, but only that the extent of the security interest be determined by state law. The provisions of 11 U.S.C. § 363 concerning use of cash collateral embody a "federal interest [that] requires a different result" (*Butner,* 440 U.S. at 55, 99 S.Ct. at 918) than under state law when it comes to the question whether the debtor may use the mortgagee's collateral despite the absence of a right to do so under state law outside of bankruptcy. To the extent that the decisions turn on the intangible nature of rents, *see North-* west *Commons,* 136 B.R. at 219–20, the court rejects such reasoning. *See, e.g., In re Challenge Air. Intern., Inc.,* 952 F.2d 384, 387 (11th Cir. 1992); *In re Wolensky's Ltd. Partnership,* 163 B.R. 629, 635–36 (Bankr.D.D.C.1994).

**10.** To the extent that the mortgagee bid in the property at the foreclosure sale, its entitlement to rents after transfer of the title to the property rests on its ownership of the property, not on a claim against the debtor, and ought not be pursued in this adversary proceeding.