Charles F. GOLDSMITH, Appellant,

v.

WILLIAM S. BERGMAN ASSOCIATES, INC., et al., Appellees.

No. 95–CV–1650.

District of Columbia Court of Appeals.

Argued Oct. 10, 1996.

Decided March 26, 1998.

Roger D. Luchs, Washington, DC, for appellant.

Douglas E. Fierberg, Washington, DC, for appellees.

Before STEADMAN and RUIZ, Associate Judges, and MACK, Senior Judge.

RUIZ, Associate Judge:

This case is the second incarnation of a dispute between two creditors, appellant, Charles F. Goldsmith, a general partner of Midcity Investment Company ("Midcity"), and appellees, William S. Bergman Associates ("WSBA") and Sherman, Meehan & Curtin, P.C. ("SMC"), WSBA's counsel. On appeal, Goldsmith, on behalf of Midcity, alleges that the trial court erred in quashing Midcity's writ of attachment on moneys owed to WSBA and in denying Goldsmith's motion for judgment of condemnation of such moneys. Although we agree that the writ of attachment was properly quashed to the extent Midcity's claim was subject to the senior lien of SMC, we hold that the writ should have been allowed to stand with respect to amounts in excess of SMC's claim.

## I.

Much of the history of the current appeal centers around a similar nucleus of facts previously before this court in *Wolf v. Sherman*, 682 A.2d 194, 196 (D.C.1996).[1] Briefly, after WSBA defaulted on a lease obligation with Midcity, in 1990 Midcity obtained a judgment in Superior Court for $67,383.90 plus interest and costs against WSBA in a landlord-tenant proceeding. *See id.* at 196. Midcity, however, was largely unsuccessful in collecting the judgment. In 1991, WSBA, in turn, had obtained a judgment in excess of $100,000 against a former employee, William R. Dyer. A 1992 fee agreement between SMC and WSBA provided that SMC would have a lien on funds recovered by WSBA from Dyer. Pending appeal, WSBA and Dyer entered into an agreement in October 1994 whereby Dyer placed $80,000 in escrow, with SMC acting as the escrow agent on behalf of WSBA and Dyer. *See id.* After discovering WSBA's judgment against Dyer, in December 1994 Midcity filed a creditor's bill suit against SMC seeking to attach the funds SMC was holding in escrow. SMC asserted that it had a lien on the escrowed funds; Midcity contested the validity of SMC's lien. The trial court, Judge Keary, granted sum-

mary judgment for SMC concluding that SMC had a valid lien on the escrowed funds. Upholding the trial court's grant of summary judgment for SMC, this court determined that the language in the retainer agreement between WSBA and SMC created an express lien on "the funds placed in escrow" that was superior to Midcity's claim as a judgment creditor. *See id.* at 198.

Before we ruled in *Wolf* that SMC had an express lien, Midcity in 1995 obtained a second writ of attachment, this time directly on Dyer,[2] to attach any moneys, beyond the amount in escrow, which were still owed to WSBA. Dyer's answer to the writ indicated that he had an outstanding debt to WSBA of approximately $45,000. SMC moved to intervene and transfer the case to Judge Keary because she was familiar with the issues and had previously determined that SMC had a valid lien. Both motions were granted. Before Judge Keary, WSBA and SMC moved to quash Midcity's writ of attachment on the debt owed by Dyer claiming: 1) that SMC was still owed approximately $18,500 in attorney's fees, 2) that Judge Keary's previous summary judgment order finding that SMC had a lien on the funds in escrow also applied to the excess funds, and 3) that the Internal Revenue Service ("IRS") had filed superior liens which rendered Midcity's writ unenforceable. At the same time it opposed the motion to quash, Midcity filed a motion for judgment of condemnation on its writ. The trial court quashed the writ of attachment in its entirety and denied Midcity's motion for judgment of condemnation, which Midcity now appeals. About a month after this appeal was filed, WSBA settled with Dyer on December 20, 1995.

## II.

Preliminarily, we must address WSBA and SMC's contention that this appeal is moot because WSBA's settlement with Dyer extinguished any obligation due from Dyer to WSBA. Thus, they argue, any order reversing the trial court would be of no conse-

---

1. Wolf, like Goldsmith, was a general partner of Midcity.

2. The writ of attachment was issued in the underlying landlord-tenant proceeding between Midcity and WSBA.

quence because there is no property to which a writ on Dyer's obligation to WSBA could attach. The record is unclear as to the terms and amount of the settlement.[3] However, prior to settlement, Dyer acknowledged owing WSBA approximately $45,000 beyond the amount held in escrow. SMC claims that WSBA owes it part of this amount, secured by its fee agreement with WSBA. Midcity, which disputes SMC's lien, claims it is entitled to attach and condemn the non-escrowed funds paid by Dyer to WSBA, regardless of any settlement or SMC's lien.

■ "Service of the writ on the garnishee creates a valid lien in favor of the judgment creditor on the debtor's property held by the garnishee." *Consumers United Ins. Co. v. Smith,* 644 A.2d 1328, 1352 (D.C.1994). The purpose of the writ is to prevent the garnishee " 'from prematurely disposing of any assets belonging to the judgment debtor that come into the garnishee's hands at any time prior to the resolution of the garnishment proceeding.' " *First Va. Bank v. Randolph,* 920 F.Supp. 213, 215 (D.D.C.1996), *rev'd on other grounds,* 324 U.S.App. D.C. 29, 110 F.3d 75 (1997) (quoting *Cocco v. Merchants Mortgage Co.,* 69 Md.App. 68, 516 A.2d 596, 598 (Md.1986)). When the writ is quashed by the trial court the lien is dissolved and the garnishee may transfer the property that had been subject to the garnishment. *See Palmer v. McClelland,* 123 A.2d 357 (D.C.1956). However, where an appeal has been filed from the trial court's ruling quashing the attachment, " 'pending the appeal the garnishee [is] bound to retain the money in his hands.' " *Mandel v. Lofton,* 89 A.2d 880, 881 (D.C.1952) (quoting *Bryan*

*v. Duncan,* 19 D.C. (8 Mackey) 379, 383 (1890) and distinguishing *Bryan* because no appeal had been taken from order quashing garnishment in that case); *see First Va. Bank v. Randolph, supra,* 920 F.Supp. at 216 (citing *Bryan* and *Mandel* ).

■ Here, Midcity's lien created by the writ of attachment was still in effect, because of the filing of this appeal, at the time that Dyer settled with WSBA and paid the funds over to WSBA. The writ expressly referred to an amount of $67,383.90 plus costs and interest from the date of judgment, February 14, 1990, less a credit of $5,256.36. Therefore, although the settlement may have extinguished any further obligation from Dyer to WSBA, the garnishee had a continuing obligation to hold the funds subject to Midcity's lien at the time of settlement. Dyer, the original garnishee, who is not a party to this appeal, ordinarily would be a necessary party to our consideration of an appeal from an order quashing the writ. *Cf. Palmer, supra,* 123 A.2d at 357 (dismissing the appeal due to absence of garnishee as party to appeal). However, WSBA, as Midcity's judgment debtor was on notice of Midcity's attachment on Dyer and appeal from the order to quash it. Moreover, as Dyer's transferee, WSBA remains subject to the attachment, to the extent, at least, of the moneys it received in settlement from Dyer.[4] *See Jack Dev., Inc. v. Howard Eales, Inc.,* 388 A.2d 466, 468 n. 3 (D.C.1978) ("[I]f the attachment has been perfected ... the transferee takes the property subject to the attachment."). The appeal, therefore, is not moot.[5]

---

3. The fact of settlement was mentioned, without detail, in appellees' brief filed June 19, 1996. Apparently, this was the first time Midcity was informed of the settlement. Midcity represents that it was unsuccessful in its attempts to obtain details of the WSBA–Dyer settlement.

4. Technically speaking, the property garnished in Dyer's hands was the intangible judgment debt that he owed to WSBA; but WSBA, as the judgment debtor of Midcity, received that payment with knowledge of Midcity's garnishment and took payment subject to the garnishment lien. In that sense WSBA now stands in Dyer's shoes *vis à vis* Midcity. WSBA therefore remains subject to the garnishment proceeding although

Dyer is not a party to this appeal. *Cf. Palmer, supra,* 123 A.2d at 357.

5. We address no other legal issues related to the settlement. Midcity does not expressly argue, and therefore we do not address, that the parties to the settlement had any obligation to protect Midcity's garnishment claim in agreeing to settle or in payment of the settlement to WSBA. However, as Midcity states in its Reply Brief, "many questions remain unanswered" concerning the Dyer–WSBA settlement. In view of our disposition, we assume that such questions will be answered and any related legal issues may be raised, as appropriate, before the trial court.

## III.

■ Midcity argues that SMC does not have a lien on the debt owed by Dyer to WSBA beyond the funds held in escrow, and that *Wolf* did not recognize such a lien because *Wolf* specifically addressed only the funds in escrow, leaving open the fate of the excess funds. The reasoning in *Wolf,* however, based on the language of the retainer agreement between WSBA and SMC to establish an express lien, is equally applicable to the excess funds as to the funds in the escrow. The retainer agreement provided in part:

> We have agreed to continue to represent you [WSBA] in the *Dyer* appeal under the following terms and conditions: (1) It is understood and agreed that Sherman, Meehan & Curtin, P.C. shall have a lien against and shall be entitled to be paid from *any sums that are recovered or awarded by way of* agreement, settlement, *judgment,* or any other manner in the Dyer matter for all fees due and owing from your business.

*Wolf, supra,* 682 A.2d at 198 (emphasis added). The language "from any sums that are awarded by way of ... judgment" necessarily includes the amount owed by Dyer to WSBA, whether or not it was held in escrow, and created an express lien on the non-escrowed funds from the judgment against Dyer that were subsequently paid in settlement by Dyer to WSBA. SMC is thus entitled to priority over Midcity in such funds for the additional amount SMC claims to be owed by WSBA. The trial court's order quashing Midcity's writ was appropriate as to the secured amount SMC claimed it was still due by WSBA.

This leaves the remainder, if any, of the non-escrowed amount which was paid in settlement by Dyer to WSBA.[6] Before the trial court and on appeal, WSBA and SMC argue that the trial court properly quashed the writ of attachment in its entirety and denied the request for condemnation with respect to these moneys because five Notices of Federal Tax Liens filed by the IRS against WSBA between 1990 and 1993, before Midcity's writ of attachment issued in 1995, are superior to Midcity's lien and effectively preclude the writ of attachment from being executed.[7] The premise of this argument is that the IRS's liens on WSBA's assets are superior to Midcity's lien and that, because the amount secured by the IRS liens is substantially larger[8] than the amount due from Dyer to WSBA, the IRS's liens encumber the entire remaining amount. Even assuming that the IRS liens are superior to and greater in amount than the settlement amount,[9] we disagree that the IRS's liens on WSBA's interest in the Dyer settlement required the quashing of Midcity's writ of attachment on the same funds.

The stated reason for and effect of quashing Midcity's attachment are anomalous in a number of respects. First, we note that neither WSBA, nor SMC, which vigorously

---

6. We have determined *supra* that SMC had an express lien on that *portion* of the moneys held by Dyer as garnishee in the secured amount that WSBA still owed to SMC, and that, with respect to such amount, SMC had an interest superior to Goldsmith's subsequent attachment. To the extent that the amount owed by Dyer to WSBA exceeded SMC's secured amount, SMC has no interest in a *complete* quashing of the writ of Midcity's attachment.

7. Under 26 U.S.C. § 6321 (1994), a lien on property and all rights to property is created in favor of the United States for any tax which a person neglects or refuses to pay after demand. The lien arises when an assessment is made, and continues until the taxpayer's liability "is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Pursuant to 26 U.S.C. § 6323, recordation of a notice of lien gives the United States priority over other lien-

holders subject to certain exceptions not applicable here. WSBA and SMC represent that the IRS's liens against WSBA were recorded.

8. Before the trial court, counsel for WSBA represented that at the time WSBA owed the IRS in excess of $140,000.

9. There are several unknowns in this assumption: the amount of the WSBA–Dyer settlement; the amount of the tax owed by WSBA; and the enforceability of the IRS liens. Also, Midcity contends that enforcement of the IRS liens filed prior to and during 1990 may be precluded by the then applicable six year statute of limitations. The statute of limitation has been extended to ten years for taxes assessed after November 5, 1990, or as to which the period of collection had not expired as of that date. *See* 26 U.S.C. § 6502(a) (1994).

defend the quashing of Midcity's attachment of the settlement funds, have any claim to the funds at issue: SMC's express lien appears to have been satisfied by the settlement moneys paid by Dyer to WSBA[10] and WSBA owes more than that amount to Midcity. *See* D.C.Code § 16–554 (1996); *cf. Monarch Life Ins. Co. v. Elam,* 286 U.S.App. D.C. 396, 398, 918 F.2d 201, 203 (1990) (personal injury plaintiff who assigned interest to a medical provider could not assert the provider's interest in her property against garnishment of settlement proceeds by a judgment creditor). Second, the result of quashing the attachment is that WSBA, which owes both Midcity and the IRS, has kept the funds at issue, without paying either of these creditors. Third, Dyer as the garnishee who could have been concerned about liability to the IRS if he mistakenly paid the funds to the wrong party, did not interplead the IRS and is not involved in this appeal. See note 4; *cf. O'Daniel v. Porter,* 99 U.S.App. D.C. 398, 399, 240 F.2d 636, 637 (1957) (per curiam).[11] Lastly, the IRS, in whose purported interest the trial court quashed the attachment, does not appear to have served the garnishee, see D.C.Code § 16–545 (1996), or indicated any interest in otherwise asserting whatever rights it may have in connection with the subject attachment.[12]

Under these circumstances, the trial court erred in summarily quashing Midcity's writ of attachment on Dyer with respect to the amount in excess of the amount WSBA owed to SMC which was secured by SMC's express lien. Accordingly, we vacate the order quashing the writ insofar as it applies to such excess and the order denying Midcity's motion for judgment of condemnation. We remand the case for further proceedings consistent with this opinion.[13]

*Affirmed in part and reversed in part.*

---

10. See note 6.

11. As discussed earlier in connection with the issue of mootness, WSBA as a transferee with notice of Midcity's attachment, holds the property subject to the garnishee's obligations at least to the extent of the funds paid in settlement. Moreover, we cannot lose sight of the fact that here the transferee is also the judgment debtor.

12. The parties represent that the IRS has been notified of the writ of attachment and the related litigation. While recordation of the IRS's liens gives the United States priority over other lienholders under the Internal Revenue Code, there are specific statutory procedures that must be followed in order to collect the unpaid taxes. In *United States v. National Bank of Commerce,* the Court stated:

> A federal tax lien, however, is not self-executing. Affirmative action by the IRS is required to enforce collection of the unpaid taxes. The Internal Revenue Code provides two principal tools for that purpose. The first is the lien foreclosure suit. Section 7403(a) authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." Section 7403(b) provides: "All persons having liens upon or claiming any interest in the property

involved in such action shall be made parties thereto." The suit is a plenary action in which the court "shall ... adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." § 7303(c). The second tool is the collection of the unpaid tax by administrative levy. The levy is a provisional remedy and typically "does not require any judicial intervention." The governing statute is § 6331(a). It authorizes collection of the tax by levy which, by § 6331(b), "includes the power of distraint and seizure by any means."

472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985) (internal citations omitted). Nothing in the record indicates any efforts taken by the IRS, other than recordation, to execute on its liens. Unlike SMC, the IRS did not assert the priority of its liens before the Superior Court.

13. Midcity recognizes that its claim to the funds would be subject to any superior liens held by the IRS. *See* 26 C.F.R. § 301.6331–1(a)(1); *United States v. Cache Valley Bank,* 866 F.2d 1242, 1244–45 (10th Cir.1989) ("The transfer of property subsequent to the attachment of the [IRS] lien ... does not affect the lien because no matter into whose hands the property goes, the property passes *cum onere,* or with the lien attached."). However, Midcity claims it would have valid defenses to the IRS liens. See note 7, *supra.*