**VECTOR REALTY GROUP, INC., Appellant,**

v.

**711 FOURTEENTH STREET, INC., Appellee.**

**Signet Bank, Intervenor/Appellee.**

**No. 97–CV–303.**

District of Columbia Court of Appeals.

Argued Feb. 19, 1998.

Decided May 28, 1998.

---

David J. Branson, Washington, DC, for appellant.

George H. Mernick, Washington, DC, for appellee.

Michael N. Druckman, Washington, DC, with whom Andrew J. Toland, Baltimore, MD, were on the brief, for intervenor.

Before FARRELL and KING, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

This is an appeal from the trial court's denial of appellant's motions for writ of attachment, preliminary injunction, judgment of condemnation and default judgment. Appellant argues that a secured bank mortgagee cannot hold assigned rents in excess of principal and interest payments and other specified expenses in a reserve account without first satisfying a judgment creditor of the mortgagor. We affirm.

## I.

Vector Realty Group, Inc. ("Vector") procured the District of Columbia as a tenant for the building owned by 711 Fourteenth Street, Inc. ("711")[1] pursuant to a brokerage agreement providing for a brokerage commission to be paid to Vector by 711. 711 failed to pay the commission, and on October 30, 1995, Vector won a judgment against 711 in the amount of $239,739.11 plus pre- and post-judgment interest.[2] Vector is attempting to collect on that judgment.

Signet Bank, as a mortgagee of 711, intervened in this action on March 3, 1996, to protect its interest. Signet holds notes secured by first and second deeds of trust on 711's interest in the property in the amounts of $17,750,000.00 and $4,144,791.00 respectively that preceded the brokerage agreement between Vector and 711. The deeds of trust were accompanied by assignments of leases that assigned to Signet:

> All right, title, interest and estate of Assignor, as landlord or lessor, in, to and under all of the lease and/or sublease agreements, licenses and other agreements for the occupancy of all or any portion of the hereinafter described prop-

---

1. 711 Fourteenth Street, Inc. was the owner of a long-term leasehold.

2. The parties have stipulated that the amount currently owed to Vector is $335,000.00. That amount was segregated from default rent settlement payments paid by the District of Columbia to Signet pending resolution of this matter in the trial court.

erty ... whether such lease and/or sublease agreements, licenses and occupancy agreements now exist or are hereafter entered into by Assignor, together with all extensions, renewals and/or modifications of, or substitutions for, such lease and/or sublease agreements, licenses and other occupancy agreements....

The assignments of leases also provided with respect to default by 711 that:

A written demand by Assignee to any lessee for the payment of rent, rentals, fees, profits, payments and other sums of money that become due under the Leases, after the occurrence of any ... default, breach or misrepresentation by Assignor claimed by Assignee, shall be sufficient to require such lessee to make all future payments of such rents, rentals, fees, payments and other sums of money directly to Assignee without the necessity for further notes to such lessee or consent by Assignor.

The trial court found that these and other provisions created a system whereby, upon default by 711 and written demand by Signet, rents on the property were automatically assigned to Signet and were to be paid into a lockbox collected by Signet.

The loans went into default in 1991 and the assignment of rents went into effect at that time. After six master modification and extension agreements, the current loan documents allow Signet to apply the collected rents to the principal and interest due on the mortgage, to the expenses of maintaining the property, and to other purposes including, in its sole discretion, the maintenance of a reserve account. The documents further authorize Signet, again in its sole and absolute discretion, to determine the purpose for any such reserve fund and the amount to be deposited in it. At the time this action commenced, Signet held a reserve account with funds in excess of $1,400,000.00.

Vector argues that Signet cannot hold excess rents in the reserve account, which Vector refers to as an escrow account, without first satisfying claims of legitimate judgment creditors. Signet responds by arguing that it has a perfected security interest in the rents owed and collected on the property that is superior to any claims of a judgment creditor.

## II.

We first consider whether Signet has a perfected security interest in the owed and collected rents. The answer hinges on whether the two "Assignment of Leases" documents created an actual assignment of rents that would require only a demand for direct rent payment to perfect, or whether the documents simply created a security interest in the rents that would require possession of the property to perfect. In making this determination, "The language of the Deed of Trust and the Assignment of Leases controls the outcome." *In re 5028 Wisconsin Ave. Assoc. Ltd.*, 167 B.R. 699, 701 (Bankr. D.D.C.1994).

In *Democratic Cent. Comm. v. Washington M.A.T.C.*, 305 U.S.App. D.C. 397, 21 F.3d 1145 (1994), the United States Court of Appeals for the District of Columbia Circuit observed, in support of one of its holdings, that "There is no precedent in the District of Columbia that supports the proposition, barring an *absolute* assignment of rents to be effective *immediately* upon default, that a mortgagee solely upon default in payment of the indebtedness may be immediately vested with possession of the property (or its rents) upon mere demand." *Id.*, 305 U.S.App. D.C. at 402, 21 F.3d at 1150 (emphasis in original). This can be read to mean that if there *is* an automatic assignment of rents immediately upon default, a mortgagee, based solely on that default, can be vested with the rents from the property.

Such a reading is supported by *In re 5028 Wisconsin Ave. Assoc. Ltd.*, *supra*, where the bankruptcy court dealt with an assignment of leases that provided that, upon default by the debtor, the debtor "does further specifically authorize and instruct each and every present and future lessee of the whole or any part of the Premises to pay all unpaid rents agreed upon in each tenancy to Bank upon receipt of demand from Bank to so pay the same." *Id.*, 167 B.R. at 701. The court held that language to be sufficient to create a perfected security interest in the assignment of rents upon the making of such a demand.

The court also determined that there was "no meaningful difference between an escrow or 'lockbox' arrangement . . . that starts immediately, and one that starts upon the mortgagee's demand after default." *Id.*, 167 B.R. at 704.[3]

*5028 Wisconsin Ave.*, *supra*, distinguished *In re 1301 Connecticut Ave. Assoc.*, 117 B.R. 2 (Bankr.D.D.C.1990), *aff'd*, 126 B.R. 1 (D.D.C.1991), in which the court reached a seemingly contrary result, holding that, "Where the parties create a security assignment, . . . the clear rule of law in the District of Columbia is that the assignment becomes effective only upon the lender's direct or indirect possession of the underlying mortgaged property." *Id.*, 126 B.R. at 3. The *5028 Wisconsin Ave.* court noted that in *1301 Connecticut Ave.*, "the mortgagee apparently never made a demand on the tenants that they pay rents to the mortgagee." 167 B.R. at 703. Significantly, as the *1301 Connecticut Avenue* court itself pointed out, the parties in that case, "chose not to create an 'absolute assignment' or a 'present interest' in favor of the lender. . . . The parties could have devised structures to make rent from the property's tenants themselves serve as the means of repayment. The parties chose not to employ such structures." 126 B.R. at 3.

 These cases, read together with the language of the deeds of trust and assignments of leases in this case, the trial court's factually supported finding that rents were automatically assigned to Signet upon default

by 711, and the fact that a demand for direct payment of rents was made by Signet upon 711's default, persuade us to agree with the trial court's determination that, "where mortgage loan documents create a security interest in tenant rents and provide that the mortgagee may collect those rents directly from the tenants on demand in the event of a default by the mortgagor, the mortgagee perfects that security interest by making a demand (or by placement of a lockbox, coupled with a demand)." As the holder of a perfected security interest, Signet enjoys a position as to the rents superior to that of Vector as a subsequent judgment creditor.[4] *See Democratic Cent. Comm.*, *supra*, 305 U.S.App. D.C. at 409, 21 F.3d at 1157 (upon perfection of a security interest, "the mortgagee has priority over the subsequent judgment creditors with respect to the rental payments").

### III.

 In light of the above holding, the only remaining issue is whether Signet should be prohibited from holding "excess" rents without applying them to principal or interest payments. We agree with the trial court's determination that Signet, as the holder of a senior perfected security interest, is not required to make what is, "essentially nothing more than a bookkeeping entry" in order to maintain its priority over the disputed funds. In the long term, the funds are not excess at all, as they are being used to repay the indebtedness.[5] It is also important to note

---

3. We note that the reserve funds at issue here were not placed in an escrow account, but rather were in an account subject to Signet's sole control.

4. Appellant cites *Martens v. Hadley Mem'l Hosp.*, 729 F.Supp. 1391 (D.D.C.1990), in which a judgment creditor's writ of attachment was not defeated by a bank's priority interest with respect to accounts on deposit at the bank even though the debtor was in default on loans from the bank. The court relied on Article 9 of the Uniform Commercial Code to find that mere declaration of default by a secured creditor, without good faith execution of remedies for default, did not entitle the secured party to priority over another judgment creditor. *Id.* at 1395.

We find *Martens* to be inapposite. In the instant case, Signet exercised its rights for remedy of default by demanding the assignment of rents.

Therefore, as the trial court found, "the money held by Signet that Vector is attempting to attach is not the money of 711 in a general account at Signet, but rents in which Signet has a perfected security interest and which are payable directly to Signet."

5. Our recent decision in *Goldsmith v. William S. Bergman Assoc., Inc., et al.*, 708 A.2d 640 (D.C. 1998), released after oral argument in this appeal and not raised by any party, is distinguishable. In *Goldsmith*, the trial court quashed appellant's writ of attachment on excess funds owed to a judgment debtor because the Internal Revenue Service held an unenforced senior lien that encumbered all of the attached funds. We reversed, holding that appellant held a junior lien subject to the IRS' superior lien.

In *Goldsmith*, beyond recording its lien, the IRS had not acted to enforce its claim to the

that Vector concedes that Signet could defeat its claim by applying the reserve fund monies to the indebtedness, and to note also that the current loan documents give Signet unfettered discretion in the distribution and allocation of the reserve fund monies.[6] The judgment on appeal is affirmed.

*So ordered.*

excess funds, and the IRS therefore was not immediately entitled to collect the funds without further affirmative enforcement actions. 708 A.2d at 644, n. 12. In contrast, Signet here has acted to enforce its superior security interest in the assignment of rents, placing the funds in a reserve account subject to Signet's sole control. As a result, the funds Vector is attempting to attach are not "excess" as in *Goldsmith*, where no creditor had enforced a claim, and are not in an escrow account. Rather, the funds in this appeal are in the hands of a superior interest holder, who has exercised its senior rights, and are being used in repayment of a larger debt amount.

Vector has not contended that it is entitled to a contingent junior lien on these funds. In any event, that position would appear to be inconsistent with our determination that Signet has fully exercised its rights under the assignment of rents and has thereby removed these funds from the reach of junior creditors.

6. We note that appellee Signet's brief stated, without contradiction, that after the trial court's order the funds Vector was attempting to attach were removed from the reserve account and applied to the principal of the loan, thereby extinguishing Vector's claim to the monies. While practically important, this fact has not been considered in our analysis.